## Gregory A. Papailiou et al. v. D. Manusos et al.

1. EQUITY—*When it Will Not Interfere to Quell Religious Disturbances.*—Where no property rights are involved, a court of equity will not interfere to quell religious disturbances.

2. RELIGIOUS CORPORATIONS—*Trustees Have No Power to Remove a Priest Against the Will of the Members.*—Under Sec. 43, Ch. 32, R. S., the trustees of a religious corporation have no absolute power to remove a priest against the will of the members of the church.

**Bill for an Injunction.**—Appeal from an interlocutory order of the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed. Opinion filed June 13, 1903.

**Statement.**—On October 10, 1902, complainants, members of The Association of the Greek Community of Chicago, a religious corporation, filed their bill alleging that on the sixth day of January, 1902, the Rev. Nectarios Macrocordatos, as pastor, took charge of the said association and continued to administer the office of pastor thereof continuously until the filing of this bill; that said association is a part of and responsible to the Holy Synod of the Church Hallas, located in Athens, Greece; that said Synod appointed said Rev. N. Macrocordatos; and that his appointment was to continue at least one year; that in May, 1902, there was an election of officers for said association and it was there stipulated that the said Rev. N. Macrocordatos would be retained in his said office at least for a period of one year; that October 2, 1902, Rev. N. Macrocordatos was served with notice of dismissal from participating as priest to said association. Said officers claimed to have appointed Theodore Prousianos as priest in place of said Macrocordatos.

Papailiou v. Manusos.

It is alleged in the bill that said Prousianos is not properly qualified and that he has not been long enough in the priesthood to inspire respect; that the officers are not authorized by the Greek Association of Chicago to dismiss or appoint a priest, but that any change of priest can only be made by a majority of the church, and that a majority are opposed to the said Prousianos and in favor of said Macrocordatos; and it is further alleged in the bill that action has been taken or is about to be taken by the defendants as officers of the association to appropriate money out of the treasury of said association to pay attorney's fees and costs for defending this proceeding; that on Sunday, October 5th, said Prousianos held services against the protests of your complainants and the Rev. Macrocordatos; and that unless he is restrained by the order of the court he will continue to hold services contrary to the will of the majority of the members of the association and thereby a serious conflict will occur in said church and lead to irreparable damage. Complainants pray for an order of injunction restraining defendants from paying any money out of the treasury of said association toward the defense of this suit and from interfering with the action of said Macrocordatos until the further order of this court. Answers were filed denying most of the allegations of the bill, but further stating that on December 21, 1897, the said association adopted by-laws placing the control and direction of the association and the church in the charge of the board of trustees, consisting of twenty-four members.

November 21st, on motion of complainants, it was ordered that the defendants be restrained from interfering with the Rev. Macrocordatos in the performance of his duties as priest in the association, which order was entered upon hearing of bill, answer, amended answer, and evidence taken in open court. On December 2, 1902, it was ordered that Theodore Prousianos be restrained from holding any religious services in the church.

WILLIAM A. CUNNEA, attorney for appellants; STEDMAN & SOELKE, of counsel.

PEASE & POLKEY and HENRY C. BEITLER, attorneys for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

The appeal in this case challenges the propriety of injunctional orders. The appellants were enjoined from interfering with a priest, the Rev. Macrocordatos, in the performance of his duties as priest of The Association of the Greek Community in Chicago. The membership of the Greek Church had divided itself into two factions. One party was led or inspired by a priest, the Rev. Macrocordatos, and the other by a priest, the Rev. Prousianos. Rev. Macrocordatos was the elder of the two priests and in the early part of 1902, officiated in the church of the association.

An election of trustees took place in the spring of 1902, and later it was found that the trustees were friends of the Rev. Prousianos. In October, after their election, they notified Rev. Macrocordatos of his dismissal as priest of the community, but he persisted in his office and at the same time the Rev. Prousianos insisted that he was entitled to the rights and emoluments of the office of priest.

Open and serious physical conflict between these two religious factions was imminent. However, if no property rights are involved, a court of equity will not interfere to quell religious disturbance.

It appears from the bill that the trustees of the assembly, supporters of the Rev. Prousianos, were about to withdraw money from the treasury of the association to defray legal expenses incurred, or to be incurred, in the litigation between the two said contending factions.

Section 43 of Chapter 32, Hurd's Rev. Stat. 1899, is as follows :

"The trustees shall have the care, custody and control of the real and personal property of the corporation, subject to the direction of the congregation, church or society, erect houses or buildings and improvements, and sell and convey any real and personal estate of such corporation, and enter into all lawful contracts in the name and in behalf of such corporation."

It will be noted from the foregoing section that the trustees had no right to overrule the will of the members of the congregation in the matter of appointing or removing a priest. Their acts are subject to the direction and control of the association. Doubtless, the trustees have the control and management in the administration of the affairs of the church, except where the association expresses or attempts to express its will.

It is common knowledge that the officers appointed to care for the property of a religious corporation are not charged in any respect with the duty of attending to or the right to interfere with the religious concerns of the association.

We do not find in the law that absolute power is given to mere trustees of a church to remove a priest against the will of the members of the church.

In the case at bar, it is claimed that the trustees were in the act of forcibly preventing the Rev. Macrocordatos from performing religious services for the society in its church building, and were placing the Rev. Prousianos in his stead, to the confusion of the worshipers and the interference of sacred rites; and the force of the trustees was to be carried further by diverting money from the treasury of the association to carry on litigation.

It is suggested by counsel that the trustees of this church had, prior to the filing of the bill, hired and discharged priests without their authority being questioned.

This procedure may have been tolerated and the trustees may be considered as having acted in the capacity of agents for the congregation; but the power to set aside such agency can not be questioned. We think the order of the court, under the circumstances of this case, providing for an election to ascertain the wishes of the members of the association as to the discharge of Rev. Macrocordatos eminently proper and wise.

The orders of injunction prevented what threatened to be most unseemly strife in the house of public worship, an invasion of the property rights and privileges of the Rev.

Macrocordatos and of the congregation, and an improper diversion of moneys belonging to the association. It is true police power might have been invoked to quiet public disturbance, but not until public worship had been destroyed.

In view of the facts as presented to us by this record, we are satisfied that the granting of the injunctional orders was a proper exercise of equity jurisdiction, and after a careful review of the arguments of counsel, the statutes, by-laws of the association, and authorities considered, we do not find that the absolute power to discharge the Rev. Macrocordatos from his position as priest of the congregation was resident with the board of trustees regardless of the will of the members of the church.

The orders of injunction are therefore affirmed.