## BENTLE ET AL. *v.* ULAY ET AL.

[No. 21,803.   Filed -April 20, 1911.]

1. RELIGIOUS SOCIETIES.—*Union.*—*Decision of Church Judicatories.* —*Property.*—*Presbyterianism.*—Where the highest judicatories of the Presbyterian Church in the United States of America and the Cumberland Presbyterian Church agree that the doctrines and beliefs of both churches are the same, and the question of union is submitted according to their respective rules to the membership, and a majority of each church favors union, the two bodies become merged into one, bearing the agreed name, and the property of each becomes the property of the united church. *Hatfield* v. *DeLong*, 156 Ind. 207, distinguished.   p. 496.

2. RELIGIOUS SOCIETIES.—*Representative Government.*—*Rule by Majorities.*—A religious society, representative in character, in the absence of some constitutional prohibition, is governed by a majority thereof, unless the action of such majority is against the basic rules of the faith, doctrines or practices of the church. p.-497.

3. RELIGIOUS SOCIETIES.—*Courts.*—*Conscience.*—Neither a church nor a court can determine or enforce matters of conscience upon persons.   p. 499.

From Superior Court of Vanderburgh County; *Alexander Gilchrist*, Judge.

Action by Jerome D. Ulay and others against William Bentle, Sr., and others.   From a judgment for plaintiffs,

defendants appeal. Transferred from Appellate Court (see 46 Ind. App. 660). *Affirmed.*

*William Reister, W. C. Caldwell* and *George W. Shaw,* for appellants.

*J. E. Williamson, John M. Gaut, W. H. Hill, H. D. Hinkle* and *C. B. Kessinger,* for appellees.

PER CURIAM.—This cause was transferred to this court from the Appellate Court under §1429 Burns 1908, Acts 1893 p. 29, §3, with the recommendation that the case of *Ramsey* v. *Hicks* (1910), 174 Ind. 428, be overruled.

This action was brought by appellees, for themselves and all other members of the Presbyterian Church in the United States of America, and especially for the membership of the "Monroe City congregation of that church at Monroe City, Indiana," which they aver was a congregation in the denomination of Christians, formerly known as the Cumberland Presbyterian Church, against appellants, to restrain them, as persons who were, and who still claim to be, members of that congregation of the Cumberland Presbyterian Church and assert that said congregation and church still exist, from molesting appellees, as members of the Presbyterian Church in the United States of America, in the exclusive use, enjoyment and control of the house of worship and parsonage of the Monroe City congregation of the Cumberland Presbyterian Church, from which property they have excluded appellees, because of an alleged union of the two denominations.

The deed to the two lots upon which the church structure and parsonage are situated was a warranty deed, dated December 20, 1895, for the consideration of $300, to three named persons, one of whom was appellant William Bentle, Sr., "as trustees of the Cumberland Presbyterian Church of Monroe City, Indiana," without other qualifications.

There was a judgment enjoining the defendants from interfering with plaintiffs in the use, enjoyment, possession

and exclusive control of the church building, parsonage and other property which belongs to the Cumberland Presbyterian Church of Monroe City, Indiana. The latter clause seems somewhat at variance with the former part of the judgment, but there was no motion to modify, and the judgment is here treated as one that involves the question of the coalition of the two great Presbyterian bodies, the history of which is set out in the case of *Ramsey* v. *Hicks, supra,* and the real contention is the same as was involved in that case, and the learned and distinguished counsel for appellants concede this to be true, and frankly and urgently appeal to us to overrule that decision. A high regard for the judgment of another court of our own State, the magnitude of the interests involved, and the sincere attitude of a great body of highly enlightened and progressive citizens, demand that the question should receive again at our hands careful review, together with a consideration of the basis for distinguishing *Hatfield* v. *DeLong* (1901), 156 Ind. 207, 51 L. R. A. 751, 83 Am. St. 194, which we are asked to approve and follow.

That both bodies are representative in form and character, and not independent or congregational, is the controlling fact in the case. It is not denied, but is

1. in fact conceded, that, upon all questions of doctrine, faith and discipline, the highest judicatory in each of the former organizations was the final arbiter. When the highest judicatory in each therefore agreed upon the unity of the doctrine and faith of each, the practice already being virtually the same, and this was followed by a submission of the question of union in the manner provided by the organic law of each organization for the submission of all questions, through the designated representatives, there necessarily resulted in fact, as well as in law, a union under the adopted name, and with it passed the title to all property not impressed with some other trust, such as might distinguish it. The great Cumberland Presbyterian Church,

after nearly a hundred years, had forced upon its perhaps greater sister the advanced and enlightened doctrinal views of the former, according to the highest judicatory of each, had performed perhaps as great an office as had obtained since the days of Luther, and there seemed every reason for the union of these two great bodies; and it is to be regretted that the question of the control of property should be the occasion of the unhappy difference that is the subject of this and other similar actions. If there is any triumph in the result, it is certainly the triumph of the Cumberland Presbyterian Church.

With respect to the case of *Hatfield* v. *DeLong, supra,* it will be observed from an examination of that case that it is based upon fraud and conspiracy in the constitution of a tribunal from which there was no appeal, in violation of the organic provisions involving at least a *quasi*-civil right, for while no civil right was directly affected, indirectly a pecuniary consideration was involved, together with such distinction as being a lay delegate might create. It is not claimed here that the tribunal was fraudulently created, but that there was no express power under the constitution of the Cumberland Presbyterian Church, by which its representatives in assembly met could unite with, and transfer its property to a sister organization, so that the real question is one of power; and when it is conceded, as it certainly appears, that it was a representative body, and controlled by majorities in its doctrines and policies, and upon all other questions which might arise, including property rights, it seems inevitable that that majority must control not only the policy but the property of the organization, so long as in so doing there is no departure from the essential doctrines of faith and practice, and the virtues which form the substantive basis of religious truth, as held by the organic body, and upon the latter question the highest judicatories have determined their essential unity. The

representatives in the general assembly of the Cumberland Presbyterian Church, in which the union was proposed, remained in session with their brothers, voted on the question of union, and remained in that body until its final adjournment, though when the result of the vote was declared, they gave notice of protest, and filed a protest, the substantial features of which were that the doctrines of the Westminster confession, upon which the proposed union was to be effected, were at great variance with the doctrines of the Cumberland Presbyterian Church; that the union would operate as a merger, and transfer the membership and property to another communion holding variant religious views from their own; that constitutional methods were not followed; and that there is no provision in the organic law of the Cumberland Presbyterian Church for its dissolution, or the merging of it into a communion holding different doctrines. It will be seen that the highest judicatory of the Cumberland Presbyterian Church, whose determinations were final upon all questions of doctrine, faith, practice, and discipline, determined that the two bodies were in substantial unity upon the Westminster confession, as were the two bodies upon all doctrinal questions. As to nonconformity to constitutional methods, the position of appellants is a negative one; that is, they claim that constitutional methods were not followed, because there was no express constitutional authority to merge or unite; but once let it be conceded that it was a representative organization, it must follow that a majority controls, and, in the absence of a prohibition, that majority is controlling, unless it undertakes to depart from the basic principles and doctrines of the organization of which it is a part; and, likewise, it may dispose of property by its action, so long as its action is within the doctrinal lines of the organization. As a government by majorities, the control must inhere in the majority, unless that majority departs from the doctrines and faith of the church, or its rules of practice, or, in case of eleemosynary,

charitable or fraternal organizations, departs from the objects and purposes of their creation, or the organic rules or laws governing them or their members, or affecting them in their civil rights, as distinguished from their religious rights, as guaranteed by federal and state Constitutions, such as liberty of conscience, religious faith, or freedom of worship, etc., unless they are interfered with or curtailed before the civil courts can interfere. If this be not so, appellant's contention would lay the axe at the very root of every organization of this character founded upon the theory of representative government, and furnish the basis for division and separation of local societies from the main body and from each other, when, and as often as, any part or the whole of a local society should see fit, and thus destroy the very autonomy which it is the policy, as defined in their organic law to which they subscribe and owe allegiance to on becoming members, to promote, by declining to recognize the authority ordained to declare the doctrines of the church, and determine for themselves the articles of faith and practice to which they will conform. True, the final judicatory may not determine for them, or enforce a matter of conscience; nor may a civil court do so. But the autonomy of the body of the church itself can only be preserved, and the form of government of either of the two contending bodies be perpetuated, by attention to the principles stated in the case of *Ramsey* v. *Hicks, supra,* and here somewhat elaborated, and we are constrained to adhere to the doctrines of that case.

It results that the judgment should be affirmed, and it is so ordered.

Morris, J., did not participate in the decision of this case.