FIRST PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA, AT WAGONER, *et al.* v. CUMBERLAND PRESBYTERIAN CHURCH, AT WAGONER, *et al.*

No. 2537.  Opinion Filed June 25, 1912.

Rehearing Denied August 20, 1912.

(126 Pac. 197.)

1.  **RELIGIOUS SOCIETIES—Churches—Union—Effect.** The effect of the Plan of Reunion and Union between the Presbyterian Church in the United States of America and the Cumberland Presbyterian Church was not the total extinction of the Cumberland Presbyterian Church.

2.    SAME—Determination of Doctrinal Questions by Ecclesiastical Courts—Review by Civil Courts. The declaration of the General Assemblies of the two churches that there was such an agreement between the systems of doctrine contained in the Confessions of Faith of the two churches as to warrant the union, rested upon a reasonable basis, was given in good faith, and will not be disturbed by the civil courts.

3.    SAME — Ecclesiastical Courts — Exercise of Power — Property Rights. When property rights are involved, it is the duty of the civil courts to inquire into the power of the ecclesiastical courts and into the regularity of the exercise of that power.

4.    SAME—Churches—Union—Proceedings—Validity. The proceedings leading to the union and reunion of the Presbyterian Church and the Cumberland Presbyterian Church were conducted by the Cumberland Church in accordance with its constitution.

(Syllabus by Ames, C.)

*Error from District Court, Wagoner County;*
*John H. King, Judge.*

Action by the Cumberland Presbyterian Church, at Wagoner, Okla., and John T. Beard, W. H. Smith, D. Gibson, and E. S. Conrad, trustees of said church, for themselves, and for all the members of the church, against the First Presbyterian Church in the United States of America, at Wagoner, Okla., Sam. Cobb, R. A. Ross, Dr. F. W. Smith, and George Thompson, trustees of said church, as trustees, J. C. Arnett, pastor, and Hilliard G. Dunlap, R. A. Ross and D. F. Heiser, to recover the possession of the Cumberland Presbyterian Church property in the town of Wagoner, and for damages for the unlawful withholding thereof. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

*John M. Gaut, G. A. Bearden,* and *Hunt & Hunt,* for plaintiffs in error.

*W. C. Caldwell, E. L. Moore,* and *F. Scruggs,* for defendants in error.

Opinion by AMES, C. This case involves the validity of the proceedings by which the union and reunion of the Cumberland Presbyterian Church and the First Presbyterian Church in the United States of America was sought to be accomplished. For

convenience, the Cumberland Presbyterian Church will hereafter be referred to as the Cumberland Church, and the Presbyterian Church in the United States of America as the Presbyterian Church. These proceedings have been the subject of litigation which has been conducted to final conclusion in ten states, eight of which have sustained the union, while two have held it to be invalid. Those states which have sustained the union are Alabama, Arkansas, California, Georgia, Indiana, Kentucky, Mississippi, and Texas. *Harris v. Crosby* (Ala.) 55 So. 231; *Sanders v. Baggerly*, 96 Ark. 117, 131 S. W. 49; *Permanent Committee of Missions of the Pacific Synod of the Cumberland Presbyterian Church in the United States v. Pacific Synod of the Presbyterian Church*, 157 Cal. 105, 106 Pac. 395; *Mack v. Kime*, 129 Ga. 1, 58 S. E. 184, 24 L. R. A. (N. S.) 675; *Ramsey v. Hicks*, 174 Ind. 428, 91 N. E. 344, 92 N. E. 164, 30 L. R. A. (N. S.) 665; *Bentle v. Ulay* (Ind.) 94 N. E. 759; *Wallace v. Hughes*, 131 Ky. 445, 115 S. W. 684; *Carothers v. Moseley* (Miss.) 55 So. 881; *Brown v. Clark*, 102 Tex. 323, 116 S. W. 360, 24 L. R. A. (N. S.) 670. Missouri and Tennessee have held that the union was not valid. *Boyles v. Roberts*, 222 Mo. 613, 121 S. W. 805; *Landrith v. Hudgins*, 121 Tenn. 556, 120 S. W. 783. Many of these cases have been considered at great length; and it is therefore unnecessary for us to make an elaborate statement of the reasons which lead to our conclusion.

The numerous objections to the Plan of Union and Reunion, which are elaborately pressed upon our attention, may be broadly classified as follows: First, that the effect of the plan is to annihilate the Cumberland Church, and that the General Assembly and Presbyteries of that church did not have the power to destroy the church; second, that there is such a direct conflict in the doctrines of the two churches that it is unlawful for the controlling bodies of the Cumberland Church to convert its property to the propagation of the doctrines of the Presbyterian Church; and, third, that at all events the procedure required by the constitution of the Cumberland Church was not followed, and that therefore the plan of union sought to be accomplished was void.

The first proposition, as stated by us, involves an inquiry into two aspects of the case, one whether the effect of the plan is the annihilation of the Cumberland Church, and the other whether the church authorities would have power to carry out such a plan. It is manifest that, if we reach the conclusion that the Cumberland Church is not annihilated, it will be unnecessary to examine the question of power. Without undertaking to state the history of the negotiations resulting in this Plan of Union and Reunion (they have been fully stated in many of the cases previously decided), it is sufficient for our purpose to say that this union occupied the attention of the highest representative bodies of both churches for several years prior to its final consummation, and that every effort was made to avoid hasty or ill-considered action. The plan finally adopted is embodied in the following report:

"The Committee on Church Co-Operation and Union of the Presbyterian Church in the United States of America, and the Committee on Fraternity and Union of the Cumberland Presbyterian Church, after a free and full interchange of views, with continued supplication for divine guidance, unanimously recommend to their respective General Assemblies for their consideration, and if they deem proper, for their adoption, the accompanying papers, viz::

"I. Plan of Reunion and Union of the Two Churches.

"II. Concurrent Declarations to be adopted by the Respective General Assemblies Meeting in 1904.

"III. Recommendations.

"I. PLAN OF REUNION AND UNION OF THE TWO CHURCHES.

"We believe that the union of the Christian churches of substantially similar faith and polity would be to the glory of God, the good of mankind, and the strengthening of Christian testimony at home and abroad.

"We believe that the manifest providential developments and leadings in the two churches since their separation, together with present conditions of agreement and fellowship, have been and are such as to justify their reunion.

"Therefore, we cordially recommend to our respective General Assemblies that the reunion of the Presbyterian Church in the United States of America and the Cumberland Presbyterian Church be accomplished as soon as the necessary steps can be taken, upon the basis hereinafter set forth.

"(1)   The Presbyterian Church in the United States of America, whose General Assembly met in the Immanuel Church, Los Angeles, Cal., May 21, 1903, and the Cumberland Presbyterian Church, whose General Assembly met in the First Cumberland Presbyterian Church, Nashville, Tenn., May 21, 1903, shall be united as one church, under the name and style of the Presbyterian Church in the United States of America, possessing all the legal and corporate rights and powers which the separate churches now possess.

"(2)   The union shall be effected on the doctrinal basis of the Confession of Faith of the Presbyterian Church in the United States of America, as revised in 1903, and of its other doctrinal and ecclesiastical standards; and the Scriptures of the Old and New Testaments shall be acknowledged as the inspired Word of God, the only infallible rule of the faith and practice.

"(3)   Each of the Assemblies shall submit the foregoing Basis of Union to its Presbyteries, which shall be required to meet on or before April 30, 1905, to express their approval or disapproval of the same by a categorical answer to this question:

" 'Do you approve of the reunion and union of the Presbyterian Church in the United States of America and the Cumberland Presbyterian Church, on the following basis: The union shall be effected on the doctrinal basis of the Confession of Faith of the Presbyterian Church in the United States of America, as revised in 1903, and of its other doctrinal ecclesiastical standards; and the Scriptures of the Old and New Testaments shall be acknowledged as the inspired Word of God, the only infallible rule of faith and practice?'

"Each Presbytery shall, before the tenth day of May, 1905, forward to the stated clerk of the Assembly with which it is connected, a statement of its vote on the said Basis of Union.

"(4)   The report of the vote of the Presbyteries shall be submitted by the respective stated clerks to the General Assemblies meeting in 1905, and if the General Assemblies shall then find and declare that the foregoing Basis of Union has been approved by the constitutional majority of the Presbyteries connected with each branch of the church, then the same shall be of binding force, and both Assemblies shall take action accordingly.

"II.   Concurrent Declarations.

"As there are matters pertaining to the interests of the church, which will manifestly require adjustment when the reunion shall have been accomplished, and concerning which it is highly desirable that there shall be a previous good understanding, the two Assemblies agree to adopt the following concurrent declara-

tión as, in their judgment, proper and equitable arrangements and agreements:

"(1)    In adopting the Confession of Faith of the Presbyterian Church in the United States of America, as revised in 1903, as a Basis of Union, it is mutually recognized that such agreement now exists between the systems of doctrine contained in the Confessions of Faith of the two churches as to warrant this union—a union honoring alike to both.    Mutual acknowledgment also is made of the teaching and defense of essential evangelical doctrine held in common by these churches, and of the divine favor and blessing that have made this common faith and service effectual.

"It is also recognized that liberty of belief exists by virtue of the provisions of the Declaratory Statement, which is part of the Confession of Faith of the Presbyterian Church in the United States of America, and which states that 'the ordination vow of ministers, ruling elders and deacons, as set forth in the Form of Government, requires the reception and adoption of the Confession of Faith, only as containing the system of doctrine taught in the Holy Scriptures.'    This liberty is specifically secured by the Declaratory Statement, as to chapter III and chapter X, section 3, of the Confession of Faith.    It is recognized also that the doctrinal deliverance contained in the Brief Statement of the Reformed Faith, adopted in 1902, by the General Assembly of the Presbyterian Church in the United States of America, 'for a better understanding of our doctrinal beliefs,' reveals a doctrinal agreement favorable to reunion.

"(2)    All the ministers and churches included in the two denominations shall be admitted to the same standing in the united church which they may have held in their respective connections up to the consummation of the reunion.

"(3)    The boundaries of the several Presbyteries and Synods shall be adjusted by the General Assembly of the United Church.

"(4)    The official records of the two churches during the period of separation shall be preserved and held as making up the history of the one church.

"(5)    As soon as practicable after the union shall have been effected, the General Assembly shall reconstruct and consolidate the several permanent committees and boards, which now belong to the two Assemblies, so as to represent, with impartiality, the views and wishes of the two bodies constituting the reunited church.

"(6)    The institutions of learning, together with the endowment and other property, real and personal, owned by them,

which are now under the control of the Cumberland Presbyterian Church, shall remain in charge of and be controlled by the boards of trustees, or other managers respectively, now in charge of such institutions, endowment and property, or by their successors similarly appointed or elected; and no greater control of such institutions, their property or affairs, shall be exercised by the General Assembly, or other ecclesiastical court or body, of the reunited church, than is now exercised by the General Assembly, or other ecclesiastical court or body, of the Cumberland Presbyterian Church: Provided, that the governing board of any of said institutions of learning shall be at liberty to enter into such special arrangement or agreement with the ecclesiastical body controlling it, as may enable said institution to preserve its integrity and maintain its present policy. And also provided, that nothing in this declaration shall affect the relationship or control of any of the institutions of learning now connected with the General Assembly, or other ecclesiastical court or body, of the Presbyterian Church in the United States of America.

"(7) The corporate rights now held by the two General Assemblies and by their boards and committees, shall be consolidated and applied for their several objects as defined and permitted by law.

"8. It should be regarded as the duty of all our judicatories, ministers and people, to study the things which make for peace, to guard against all needless and offensive references to the causes which have divided us, and to avoid the revival of past issues.

"III. Recommendations.

"(1) It is recommended that such a change be made in the Form of Government of the Presbyterian Church in the United States of America, as will allow additional or separate Presbyteries and Synods to be organized in exceptional cases, wholly or in part, within the territorial bounds of existing Presbyteries or Synods respectively, for a particular race or nationality, if desired by such race or nationality.

"(2) The foregoing Basis of Union and eight Concurrent Declarations shall be submitted to the respective General Assemblies of 1904, and the above Recommendation, numbered 1, shall be submitted to the General Assembly of the Presbyterian Church in the United States of America, meeting in 1904; and this entire plan of union shall be operative when said Basis of Union, Concurrent Declarations, and Recommendation, numbered 1, shall have been adopted in their entirety, and where necessary by presbyterial action.

First Presbyterian Church et al. v. Cumberland Presbyterian Church.

"(3)   That the blessing of the great Head of the Church may rest upon the results of our efforts for reunion and union, it is earnestly recommended to the congregations throughout both branches of the church, that they observe Sabbath, September 18th, 1904, as a day of fervent and united prayer to Almighty, God, that He would grant unto us all 'the spirit of counsel and might, the spirit of knowledge and of the fear of the Lord,' and in the new relation now contemplated, enable us to keep 'the unity of the spirit in the bond of peace.'"

An examination of this plan, particularly sections 2, 3, 4, 5, 6, and 7 of the Concurrent Declarations, evinces that it was not the purpose of the Cumberland Church to annihilate itself, and that total extinguishment is not the result of the adoption of this plan. The ministers and churches of the Cumberland Church were admitted to the same standing in the united church. The boundaries of the Presbyteries and Synods remained intact until readjusted by the united church. The official records of the Cumberland Church were preserved in connection with the official records of the Presbyterian Church, as making up the history of the one church. The permanent committees and boards were to be so readjusted as to impartially represent the views and wishes of the two bodies constituting the reunited church. The institutions of learning and all other property belonging to the Cumberland Church were to remain in charge of the boards of trustees then in charge of the institutions, or their successors similarly selected. At the last session of the General Assembly of the Cumberland Church in 1906, the following resolutions were adopted:

"Resolved (2) that, in uniting with the Presbyterian Church in the United States of America, the Cumberland Presbyterian Church does not alienate the property now held for particular congregations of the Cumberland Presbyterian Church; but that, in the reunited church, such property will continue to be held for the use and benefit of particular congregations in like manner as heretofore.

"Resolved (3) that, in the adjournment of its General Assembly, as a separate assembly, the Cumberland Presbyterian Church does not destroy or interrupt its historical continuity, but will continue its life, its history and its work in the reunited church un-

der the name of the Presbyterian Church in the United States of America."

The effect of the plan, therefore, upon the individual congregation of the Cumberland Church was to leave it intact, in the possession of its property and of all its civil rights. The Presbyteries, of which the individual congregations formed a part, remained intact until their boundaries might be changed as provided by law. The Synods, of which the Presbyteries formed a part, likewise remained intact until their boundaries might be changed as provided by law. The General Assembly, the highest body of the church, adjourned to meet as a part of the General Assembly of the Presbyterian Church, and all its records were expressly preserved as a part of the history of the reunited church. The membership and ministry of the church remained intact. They continued to worship the same God whom they had worshiped before. They continued to worship in the same houses in which they had previously worshiped. They continued to exercise all the property rights which they had previously enjoyed; the only difference being that, instead of calling themselves members of the Cumberland Church, they united with those who had previously called themselves members of the Presbyterian Church, and all became a part of the one organization, designed to have a larger and more powerful influence in the propagation of the Christian religion. As further evidence that the integrity of the Cumberland Church was to be preserved, the General Assembly of the Presbyterian Church adopted the following declarations:

"The General Assembly of the Presbyterian Church in the United States of America, having added to its rolls the Synods and Presbyteries and churches and ministers lately subject to the General Assembly of the Cumberland Presbyterian Church, and constituting said church, and earnestly desiring to retain in the membership of each particular church every one in connection therewith prior to the consummation of the reunion, and being apprehensive that some of them may be reluctant to acquiesce in what has now been effected, because of certain misapprehensions which should be removed, if possible, now solemnly declares:

"First. That in the Presbyterian Church no acceptance of the doctrines of the church is required of any communicant, beyond a personal faith in Jesus Christ as Son of God, and Savior of the world, and a sincere acceptance of Him as Lord and Master.

"Second. That ministers, ruling elders and deacons, in expressing approval of the Westminster Confession of Faith as revised in 1903, are required to assent only to the system of doctrine contained therein; and not to every particular statement in it; and inasmuch as the two Assemblies meeting in 1904 did declare that there was then a sufficient agreement between the systems of doctrine contained in the Confessions of the two churches to warrant the union of the churches, therefore the change of doctrinal standards resulting from the union involves no change of belief on the part of any who were ministers, ruling elders or deacons in the Cumberland Presbyterian Church. Further, this Assembly specifically declares that since the revision of 1903, by which the Confession of Faith was amended, by change of its text, by a declaratory statement, and by additions, it is no longer allowable to interpret our system of doctrine in any fatalistic sense; nor are we willing to admit that such fatalistic interpretation was ever warranted, whatever misapprehension may have existed in the mind of any person.

"Third. In view of the fact that reunion involves no change whatever in the relations of communicants, ruling elders and deacons to their own particular churches, and, except in few instances, none in their relations to their Presbyteries and Synods, and brings all into a General Assembly differing from their former Assembly only in size and its representation of a larger church, this Assembly expresses the hope that all who have thus far opposed reunion may soon realize that they can engage as heartily in the chief work that our Lord requires of us—the evangelization of the world—as ever before, and with a prospect of a great efficiency because they lay aside personal preferences in the interest of the union of Presbyterians in a great forward movement."

We do not think the effect of this plan was the annihilation or total extinguishment of the Cumberland Church; and therefore it is unnecessary for us to inquire into the power of the representatives of that church to destroy itself.

Second. The Cumberland Church had its rise in the great revival of 1800, which swept over a large territory, including the states of Kentucky and Tennessee. Some of the ministers

of the Presbyterian Church, as a result of that revival, denied the doctrines of election and reprobation as they understood them to be expressed in the Westminster Confession of Faith, and took the view that Christ died as an atonement for all men who would accept Him as their Savior, and that there were no eternal reprobates, foreordained from the foundation of the world. They interpreted the Westminster Confession of Faith as antagonistic to this view, and after some years of negotiations withdrew from the Presbyterian Church, and in the Cumberland country organized a Presbytery of their own in the year 1810. This organization developed into the Cumberland Church, and spread its membership and ministry over a large part of the United States. It is now urged that there is still such vital doctrinal difference between the two churches that they could not be united, and that it is the duty of the courts to hold, in the protection of the religious liberty of the protesting Cumberlands, that their church property cannot be taken from them and diverted to the extension of doctrines inconsistent with the trusts to which it was devoted. We are furnished with parallel columns showing what is alleged to be the essential doctrinal differences between the two churches. For instance, sections 3 and 4 of chapter 3 of the Presbyterian Confession of Faith are contrasted with section 8 of the Cumberland Confession of Faith. Sections 3 and 4 are as follows:

"III. By the decree of God, for the manifestation of His glory, some men and angels are predestined unto everlasting life, and others foreordained to everlasting death.

"IV. These angels and men, thus predestined and foreordained, are particularly and unchangeably designed; and their number is so certain and definite that it cannot be either increased or diminished."

Section 8 of the Cumberland Confession is as follows:

"(8) God, for the manifestation of His glory and goodness, by the most wise and holy counsel of His own will, freely and unchangeably ordained or determined what He Himself would do, what He would require His intelligent creatures to do, and what should be the awards respectively of the obedient and the disobedient."

It is urged that there is essential difference between sections 3 and 4 of chapter 10 of the Presbyterian Confession of Faith and section 54 of the Cumberland Confession. Sections 3 and 4 are as follows:

"III. Elect infants, dying in infancy, are regenerated and saved by Christ through the Spirit, Who worketh when, and where, and how He pleaseth. So also are all other elect persons, who are incapable of being outwardly called by the ministry of the Word.

"IV. Others, not elected, although they may be called by the ministry of the Word, and may have some common operations of the Spirit, yet they never truly come to Christ, and therefore cannot be saved.   *   *   * "

Section 54 of the Cumberland Confession is as follows:

"All infants dying in infancy, and all persons who have never had the faculty of reason, are regenerated and saved."

These and many others are called to our attention, and we are urged to hold that because of these statements this union is void. On the other hand, our attention is called to the so-called "revision of 1903" of the Presbyterian Confession of Faith, some of the paragraphs of which are as follows:

"I. God, in the infinite and perfect love, having provided in the covenant of grace, through the mediation and sacrifice of the Lord Jesus Christ, a way of life and salvation, sufficient for and adapted to the whole lost race of man, doth freely offer this salvation to all men in the Gospel.

"II. In the Gospel God declares His love for the world and His desire that all men should be saved, reveals fully and clearly the only way of salvation, promises eternal life to all who truly repent and believe in Christ, invites and commands all to embrace the offered mercy, and by His spirit accompanying the Word pleads with men to accept His gracious invitation.

"III. It is the duty and privilege of every one who hears the Gospel immediately to accept its merciful provisions; and they who continue in impenitence and unbelief incur aggravated guilt and perish by their own fault."

Accompanying the so-called "revision of 1903" is a declaratory statement expressly setting forth the belief of the Presbyterian Church that the doctrine of God's eternal decree is held in harmony with the doctrine of His love to mankind, and His gift of His Son to be the propitiation of the sins of all men who ac-

cept Him, and that He has provided a salvation sufficient for all, and freely offered to all; that no man is condemned, except on the ground of his own sin; and that section 3 of chapter 10 is not to be regarded as teaching that any who die in infancy are lost; and further expressing the faith that all who die in infancy are included in the election of grace.

This exact question was squarely presented to the General Assemblies of the two churches, and they expressly decided that there was "such agreement   *   *   *   between the systems of doctrine contained in the Confessions of Faith of the two churches as to warrant this union," and express reference was made to the declaratory statement which we have just summarized. In addition to this express joint action by both churches, the Cumberland Church, through its General Assembly in 1906, adopted the following resolution:

"Resolved (1) that, in the reunion and union of the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America, on the doctrinal basis of the Presbyterian Confession of Faith, as revised in 1903, the Cumberland Presbyterian Church does not surrender anything integral in its own system of doctrine, as set out in its own Confession of Faith, nor modify in any particular its adherence to the Word of God as the only infallible rule of faith and practice; nor has the Presbyterian Church asked or expected us to do so."

Some of the courts lay down the doctrine broadly that the action of the ecclesiastical tribunals in declaring their belief is binding upon the civil courts, and there is eminent authority supporting this position. The cases previously cited, which have sustained this particular union, announce that doctrine, as does also the Supreme Court of the United States. *Watson v. Jones*, 13 Wall. 679, 20 L. Ed. 666. On the other hand, there are eminent courts holding that they will consider differences in doctrine, in order to determine the validity of a union of two churches and the true ownership of the property held by one of such churches. *Boyles v. Roberts*, 222 Mo. 613, 121 S. W. 805; *General Assembly of Free Church of Scotland v. Overtoun*, Law Reports, Appeal Cases, 1904, pp. 615, 616.

It is manifest from the quotations we have set out that the General Assemblies of these two churches had reason to say that

there was sufficient doctrinal agreement between them to justify the union; that their decision was not arbitrary or plainly erroneous. Their members were in much better position to determine this question than we are. It was a subject to which they had given the study of a lifetime; and, it being apparent that there was a reasonable basis upon which their decision may be rested, and that it was given in good faith, we will not disturb it.

The real estate involved in this case was conveyed to the trustees of the Cumberland Church at Wagoner, their successors and assigns, and, having reached the conclusion that the Cumberland Church was not totally extinguished by this union, and that the decision of the ecclesiastical tribunals that there was sufficient agreement in doctrine to justify the union will be adopted by us, it follows that the purpose for which the real estate was conveyed has not been violated by the union.

Third. It remains to inquire whether the procedure leading to this union was in conformity with the constitutional requirements of the Cumberland Church. At the threshold of this inquiry, the proposition is suggested that the General Assembly (the highest legislative, executive, and judicial authority) has decided this question, and that we are bound by its decision. We do not concur in this opinion. We believe that great weight should be given by the civil courts to the decisions of the ecclesiastical courts; but where property rights are involved we do not think the civil courts should abdicate their functions. An extreme illustration will disclose our meaning. Suppose, for instance, that the General Assembly should determine that it had the constitutional power to sell the property of the church and distribute the proceeds amongst the members of the Assembly. No one would seriously contend that the members of the church could not resort to the courts of the land for protection, and yet, if we lay down the rule broadly that the decision of the ecclesiastical courts with reference to their constitutional powers is binding upon the civil courts, then the civil courts would be bound by that decision, as much so as by one which appears to them to be right. The question involved is not one of equity, but one of power; and we do not believe that

the civil courts are bound by the decision of the ecclesiastical courts upon the question of their constitutional power, or the regularity of the exercise of that power.

By section 43 of the constitution of the Cumberland Church, it is provided:

"The General Assembly shall have power to  *  *  *  decide all controversies respecting doctrine and discipline; * * * to concert measures for promoting the prosperity and enlargement of the church;  *  *  *  to receive under its jurisdiction other ecclesiastical bodies whose organization is conformed to the doctrine and order of this church;  *  *  *  to superintend the affairs of the whole church; to correspond with other churches.  *  *  * "

Section 60 is as follows:

"Upon the recommendation of the General Assembly, at a stated meeting, by a two-thirds vote of the members thereof voting thereon, the Confession of Faith, Catechism, Constitution, and Rules of Discipline, may be amended or changed when a majority of the Presbyteries, upon the same being transmitted for their action, shall approve thereof."

Section 40 provides:

"The General Assembly is the highest court of this church, and represents in one body all the particular churches thereof. It bears the title of the General Assembly of the Cumberland Presbyterian Church, and constitutes the bond of union, peace, correspondence, and mutual confidence among all its churches and courts."

The Plan of Union, which has been heretofore copied in full in this opinion, embodied the three parts, designated "Plan of Reunion and Union of the Two Churches," "Concurrent Declarations," and "Recommendations," and was submitted by the joint committee to the General Assembly of the Cumberalnd Church in 1904. The minutes disclose the following action of that General Assembly:

"On the proposition to submit and recommend the Plan of Union and Reunion to the Presbyteries, 236 votes were cast, of which two-thirds, or 158 votes, were necessary to carry the measure. As will be seen from the foregoing exhibit, the total affirmative vote was 162, and the total negative vote was 74, therefore the moderator announced that the measure had been carried by four votes more than was required by the Constitution."

Pursuant to this action, the plan was submitted to the Presbyteries and adopted by them by a vote of 60 to 51. The General Assembly of the Cumberland Church, in 1905, by a vote of 136 to 110, passed the following resolution:

"There being one hundred and fourteen (114) Presbyteries in the church, we find and declare that more than a constitutional majority of the whole number of Presbyteries in the church have voted in favor of the reunion and union, and we therefore recommend that you adopt the following preamble and resolutions:

"Whereas, the General Assembly of the Presbyterian Church in the U. S. A., which met in 1903, and the General Assembly of the Cumberland Presbyterian Church, which convened in the same year, each appointed a committee looking to a union of the said two churches; and

"Whereas, said committees, after conferring with each other, agreed upon a plan, or basis, of reunion and union of said churches, and, by a joint report, presented the same to their respective General Assemblies which convened in 1904, and recommended its adoption; and

"Whereas, the General Assembly of the Cumberland Presbyterian Church of 1904, by the constitutional two-thirds vote, adopted said joint report, including the plan, or basis, of union therein contained, and recommended and submitted said Basis of Union to the Presbyteries of the Cumberland Presbyterian Church for their approval or disapproval; and

"Whereas, each one of the one hundred and fourteen (114) Presbyteries of the church, except Florida, did, before the tenth day of May, 1905, forward to the stated clerk of this General Assembly a statement of its action on said Basis of Union, which statements have been submitted by the stated clerk to this Assembly; and

"Whereas, it appears from said statements, or reports, that sixty of said Presbyteries have approved of the reunion and union of the Presbyterian Church in the U. S. A. and the Cumberland Presbyterian Church, upon the basis set forth in said joint report, and that fifty-one (51) Presbyteries have voted disapproval of said reunion and union, one (1) Presbytery approving conditionally, two (2) Presbyteries failing to take any final action on the question:

"Therefore, be it resolved, that this General Assembly does hereby find and declare that a constitutional majority of the Presbyteries of the Cumberland Presbyterian Church have voted ap-

proval of the basis set forth in said joint report, and does find
and declare that said reunion and union has been constitutionally
agreed to by the Cumberland Presbyterian Church, and that the
said Basis of Union has, for the purposes of the union, been con-
stitutionally adopted."

Whether we decide, therefore, that the constitutional power
existed to form the union, or whether we decide that, if that pow-
er did not exist, the constitution was amended by the proceed-
ings which have been set out, is immaterial, as the same result is
reached in either event, because if the constitution did not permit
it, it was amended or changed by a two-thirds vote of the gen-
eral assembly and concurred in by a majority of the Presbyteries.

The remaining objection is that the issue was not properly
submitted to the Presbyteries; and it is argued that the Plan of
Reunion and Union of the two Churches involved two things,
one a change in the name of the Cumberland Church, and the
other the Doctrinal Basis of Union, and that only the Doctrinal
Basis of Union was submitted to the Presbyteries; and therefore,
if a constitutional amendment was necessary to change the name,
that it was not adopted. We do not concur in this proposition.
The Plan of Reunion contains four sections, and has been pre-
viously quoted in full. By section 1 it is provided that the two
churches shall be united under the name of the Presbyterian
Church. By section 2 it is provided that the union shall be ef-
fected on the doctrinal basis of the Confession of Faith of the
Presbyterian Church, as revised in 1903, and the Bible as the
only infallible rule of faith and practice. By section 3 it is
provided:

"Each of the Assemblies shall submit the foregoing Basis
of Union to its Presbyteries  *  *  *  to express their approval
or disapproval of the same by a categorical answer to this ques-
tion: 'Do you approve of the reunion and union of the Pres-
byterian Church in the United States of America and the Cum-
berland Presbyterian Church, on the following basis?' "

Then is stated section 2 of the Plan. Section 4 provides for
the report of the vote of the Presbyteries.

A careful study of this Plan and the history of the proceed-
ings of the General Assembly of the Cumberland Church con-
vinces us that the Presbyteries understood exactly what they were

voting on, and that the General Assembly intended that they should understand exactly what they were voting on, and that the requirements of section 3, that the "foregoing Basis of Union" should be submitted, included both of the previous sections. This is made plain by the form on which the subject was referred to the Presbyteries by the officers of the General Assembly, which is as follows:

"Presbyterial Vote on Organic Union.  To the ——— Presbytery—Dear Brethren:  By referring to the Minutes of the last meeting of the General Assembly (pages 25, 55a, 30, 44, 48), you will see that, in the constitutional manner, the Assembly has submitted to the Presbyteries a proposition pertaining to the reunion and union of the Presbyterian Church in the United States of America and the Cumberland Presbyterian Church, and you are asked to give the due consideration to the same and to vote thereon.  This proposition is to be put before the Presbytery in the following terms:  'Do you approve of the reunion and union of the Presbyterian Church in the United States of America and the Cumberland Presbyterian Church, on the following basis:  The union shall be effected on the doctrinal basis of the Confession of Faith of the Presbyterian Church in the United States of America, as revised in 1903, and of its other doctrinal and ecclesiastical standards, and the Scriptures of the Old and New Testaments shall be acknowledged as the inspired Word of God, the only infallible rule of faith and practice?'  To this question the Presbytery is to give categorical answer.  While the vote is taken simply upon this question, your action thereon will mean the acceptance or rejection of the entire Plan, embracing the Basis of Union, Concurrent Declarations, and Recommendations, without amendment or alteration in any part.  (See Minutes, pages 62a-65a.)  For the information of the Presbyteries, the Amendments to the Westminster Confession of Faith and the Brief Statement of the Reformed Faith have been printed in the Assembly Minutes.  (See pages 72-77.) The vote of the Presbytery is to be taken on or before April 30, 1905, and the accompanying certificate of the vote is to be returned to the Assembly's stated clerk before the tenth of May, 1905."

By this reference, it is expressly stated that the action of the Presbytery, in giving a categorical answer to the question put, would mean the acceptance or rejection of the entire Plan, embracing the Basis of Union, the Concurrent Declarations, and

the Recommendations, without amendment or alteration in any particular.

The judgment of the trial court should be reversed, with instructions to render judgment in favor of the plaintiffs in error, who were the defendants below.

By the Court: It is so ordered.