## THE STATE OF INDIANA, EX REL. HATFIELD, *v.* CUMMINS ET AL.

[No. 21,097. Filed July 1, 1908. Rehearing denied October 28, 1908.]

1. APPEAL.—*Right Result.*—Where the trial court reached a right result its judgment will not be disturbed. p. 114.
2. MANDAMUS.—*Grounds for.*—Mandamus lies to compel an inferior tribunal, corporation, board. or person to perform an act enjoined by law, or which results from an office, trust, or station; but the relator's right must be clear, and the respondent's duty imperative. p. 114.
3. SAME.—*Membership.*—*Unincorporated Associations.*—Mandamus does not lie to compel the restoring of relator to membership in a voluntary unincorporated association which does not hold or exercise any right, privilege or franchise granted by the State. p. 114.
4. SAME.—*Church Membership.*—*Restoration.*—Mandamus does not lie to compel the proper church authorities to restore relator to membership, nor to perform acts in aid thereof required by the law of such church, where no civil nor property right is involved; and the privilege of membership alone does not constitute such a right. p. 115.
5. SAME.—*Ministers.*—*Restoration to Clerical Rights.*—Mandamus does not lie to restore a minister to his clerical rights or functions, although he was wrongfully excluded therefrom. p. 120.

From Huntington Circuit Court; *William D. Hamer,* Judge.

Action by The State of Indiana, on the relation of James M. Hatfield, against J. Abijah Cummins and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*J. T. Alexander,* for appellant.

*J. B. Kenner, C. K. Lucas* and *Sumner Kenner,* for appellees.

MONTGOMERY, J.—It is alleged that the relator was a member of the religious denomination known as the United Brethren in Christ Church, and of the local society thereof known as Huntington Mission Station, located at Huntington, Indiana; that he was unjustly and irregularly expelled from such membership by the local society for "disobedience to the order of the church;" that he duly appealed to the quarterly conference in pursuance of the laws of the church; that it is the law of said denomination that when such appeal is taken the same shall first be reviewed by a board of arbiters composed of five persons, two of whom shall be chosen by the accused, two by the quarterly conference, and the fifth by these four; that his appeal was allowed by the quarterly conference, and he designated his two members of such board of arbiters, and requested appellees, who composed said conference, to select two members thereof, which was their duty, but they refused so to do, although there were more than one hundred available and eligible persons; that membership in said denomination is a valuable right, of which he has been wrongfully deprived, and for redress of which he will be without remedy, unless said board of arbiters be appointed to hear his appeal. Wherefore relator prayed the issuance of an alternative writ of mandamus, commanding appellees to appoint two qualified members of said denomination to serve as such arbiters.

An alternative writ, reciting in substance the facts just stated, was issued as prayed. Issues were joined thereon, and a trial by the court resulted in a finding and judgment in favor of appellees.

A number of intermediate questions have been suggested, which do not require consideration, since, at all events, the judgment below must be affirmed.

Under the statutes of this State "writs of mandate may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, or a duty resulting from an office, trust, or station." §1225 Burns 1908, §1168 R. S. 1881. A proceeding by way of mandamus is a legal remedy; and to justify the issuance of this writ it is essential that the relator have a clear legal right to the thing demanded, and that it be the imperative duty of the respondent to perform the act required. 19 Am. and Eng. Ency. Law (2d ed.), 725; 26 Cyc., 151.

The thing sought to be compelled by this action is the taking of an intermediate step looking ultimately toward the reinstatement of the relator in the church from which he is alleged to have been wrongfully expelled. There is no allegation that the church at large, the quarterly conference, or the local society has been incorporated under the law. The writ is directed, not against a corporate body, but against certain individuals, who, it is averred, compose the quarterly conference of the church. The statutes of this State do not authorize courts of law to issue writs of mandamus to restore a member who has been expelled from membership in a voluntary unincorporated association which does not hold or exercise any right, privilege or franchise conferred by the sovereign power of the State. Merrill, Mandamus, §157; *Burt* v. *Grand Lodge, etc.* (1887), 66 Mich. 85, 33 N. W. 13; *Weidenfeld* v. *Keppler* (1903), 84 Hun, App. Div., 235, 82 N. Y. Supp. 634; *Fritz* v. *Muck* (1881), 62 How. Prac. 69; *People, ex rel.,* v. *New York, etc., Hospital* (1898), 29 Hun, App. Div., 244, 51 N. Y. Supp. 420; *Wolf* v. *Commonwealth, ex rel.* (1870), 64 Pa. St. 252; *Wolf* v. *United Daughters, etc.* (1870), 1 Phila. (Pa.) 374.

The society, from which the relator alleges he was un-

justly and arbitrarily excluded, was purely of a religious character. The right lying at the foundation of this 4. action is one of religious association and worship. No civil or property right is shown to be involved. The only relation between the relator and other members of the congregation and church, from which he was expelled, disclosed by the pleadings, was of a spiritual and ecclesiastical nature. Civil courts have no jurisdiction and will not pass upon such ecclesiastical matters as expulsion from church membership, in cases where no civil or temporal rights are involved. The settled character of this principle, and the fundamental ground upon which it rests, will be most clearly exhibited by quotations from some of the adjudications of our own and other courts.

In the case of *Grimes's Executors* v. *Harmon* (1871), 35 Ind. 198, 9 Am. Rep. 690, this court, in substance, held that when the rights of property, or civil rights as contradistinguished from ecclesiastical rights, are involved, and such rights depend upon religious faith or orthodoxy of citizens, or the rules, discipline and practice of churches or religious denominations, the courts may entertain and determine judicially all such questions, so far as they affect the rights of persons or religious denominations to property or civil rights.

In *Gaff* v. *Greer* (1882), 88 Ind. 122, 45 Am. Rep. 449, after citing a number of cases, the court, at page 132, said: "These authorities establish the proposition that the decision of one of these judicatories is binding upon the courts where such questions arise. It is said, however, that the appellants had no notice, and for that reason the order is a nullity. This was a question for the presbytery. We cannot revise its judgment or determine its mode of procedure. This must be left to these bodies, otherwise they would be deprived of the power to construe the laws that govern them."

The principle governing the jurisdictions of civil and ecclesiastical tribunals was well summed up in the case of *White Lick Quarterly Meet. of Friends* v. *White Lick*

*Quarterly Meet. of Friends* (1883), 89 Ind. 136, where the court, speaking by Niblack, C. J., said: "Civil courts in this country have no ecclesiastical jurisdiction. They cannot revise or question ordinary acts of church discipline, and can only interfere in church controversies where civil rights or the rights of property are involved. Where a civil right depends upon some matter pertaining to ecclesiastical affairs, the civil tribunal tries the civil right, and nothing more, taking the ecclesiastical decisions, out of which the civil right has arisen, as it finds them, and accepting those decisions as matters adjudicated by another jurisdiction. The civil courts act upon the theory that the ecclesiastical courts are the best judges of merely ecclesiastical questions, and of all matters which concern the doctrines and discipline of the respective religious denominations to which they belong. When a person becomes a member of a church he becomes so upon the condition of submission to its ecclesiastical jurisdiction, and however much he may be dissatisfied with the exercise of that jurisdiction, he has no right to invoke the supervisory power of a civil court so long as none of his civil rights are invaded." The same principle was reaffirmed in the following cases: *O'Donovan* v. *Chatard* (1884), 97 Ind. 421, 49 Am. Rep. 462; *Dwenger* v. *Geary* (1888), 113 Ind. 106; *Lamb* v. *Cain* (1891), 129 Ind. 486, 14 L. R. A. 518; *Smith* v. *Pedigo* (1896), 145 Ind. 361, 19 L. R. A. 433.

In *Dwenger* v. *Geary, supra,* the court quoted the following language from *Shannon* v. *Frost* (1842), 3 B. Mon. 253: [Erroneously quoted in *Dwenger* v. *Geary* (1888), 113 Ind. 106, and in *White Lick Quarterly Meet. of Friends* v. *White Lick Quarterly Meet. of Friends* (1883), 89 Ind. 136, as from *Smith* v. *Nelson,* 18 Vt. 511—Rep.] "The court, having no ecclesiastical jurisdiction, cannot revise or question ordinary acts of church discipline or excision. Our only judicial power in the case arises from the conflicting claims of the parties to the church property and the use of it. * * * We cannot decide who

ought to be members of the church, nor whether the excommunicated have been justly or unjustly, regularly or irregularly, cut off from the body of the church.''

In the case of *Watson* v. *Jones* (1871), 13 Wall. 679, 20 L. Ed. 666, the court most aptly explained the underlying reasons for the principle under consideration, in the following language: ''In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.''

The following quotation from *Shannon* v. *Frost* (1842), 3 B. Mon. 253, commends itself: ''The judicial eye of the civil authority of this land of religious liberty cannot penetrate the veil of the church, nor can the arm of this court either rend or touch that veil for the forbidden purpose of vindicating the alleged wrongs of the exscinded members. When they became members they did so on the condition of

continuing or not, as themselves and their church might determine. In that respect they voluntarily subjected themselves to the ecclesiastical power, and cannot invoke the supervision or control of that jurisdiction by this or any other civil tribunal.''

In *Chase* v. *Cheney* (1871), 58 Ill. 509, 11 Am. Rep. 95, the supreme court said: ''We have no right, and, therefore, will not exercise the power, to dictate ecclesiastical law. We do not aspire to become *de facto* heads of the church, and, by construction or otherwise, abrogate its laws and canons. We shall not inquire whether the alleged omission is any offense. This is a question of ecclesiastical cognizance. This is no forum for such adjudication. The church should guard its own fold; enact and construe its own laws; enforce its own discipline; and thus will be maintained the boundary between the temporal and spiritual power.''

In the case of *State* v. *Rector, etc.* (1883), 28 Alb. L. J. 111, it was held that courts of law will interpose to control the proceedings of ecclesiastical bodies when a right to property is involved, but in no other instance. The following cases are to the same effect: *Livingston* v. *Rector, etc.* (1883), 45 N. J. L. 230; *Jennings* v. *Scarborough* (1894), 56 N. J. L. 401, 28 Atl. 559; *Trustees, etc.,* v. *Halvorson* (1890), 42 Minn. 503, 44 N. W. 663; *Fulbright* v. *Higginbotham* (1896), 133 Mo. 668, 34 S. W. 875; *Watson* v. *Garvin* (1873), 54 Mo. 353; *Prickett* v. *Wells* (1893), 117 Mo. 502, 24 S. W. 52; *Hale* v. *Everett* (1868), 53 N. H. 9, 16 Am. Rep. 82; *Connitt* v. *Reformed, etc., Church* (1874), 54 N. Y. 551; *Christ Church, etc.,* v. *Phillips* (1882), 5 Del. Ch. 429; *Ferraria* v. *Vasconcellos* (1863), 31 Ill. 25; *Papailion* v. *Manusos* (1903), 108 Ill. App. 272; *German, etc., Church* v. *Commonwealth, ex rel.* (1846), 3 Pa. St. 282, 291; *Walker* v. *Wainwright* (1853), 16 Barb. 486; *Powers* v. *Budy* (1895), 45 Neb. 208, 63 N. W. 476; *First Baptist Church* v. *Witherell* (1832), 3 Paige *296, 24 Am. Dec. 223; *Nance* v. *Busby* (1892), 91 Tenn. 303, 18 S. W. 874, 15 L. R. A.

801; *Harmon* v. *Dreher* (1843), 1 Speers Eq. (S. C.) 87; *Morris Street Baptist Church* v. *Dart* (1903), 67 S. C. 338, 45 S. E. 753, 100 Am. St. 727; *Wheelock* v. *First Presbyterian Church* (1897), 119 Cal. 477, 51 Pac. 841; *Iglehart* v. *Rowe* (1898), 20 Ky. Law 821, 47 S. W. 575; *West Kochkonong Congregation* v. *Ottesen* (1891), 80 Wis. 62, 49 N. W. 24; *Baxter* v. *McDonnell* (1898), 155 N. Y. 83, 49 N. E. 667, 40 L. R. A. 670; *Fadness* v. *Braunborg* (1889), 73 Wis. 257, 41 N. W. 84; *Bonacum* v. *Murphy* (1904), 71 Neb. 463, 98 N. W. 1030, 104 N. W. 180; *Hendryx* v. *People's United Church* (1906), 42 Wash. 336, 84 Pac. 1123, 4 L. R. A. (N. S.) 1154, 7 Am. and Eng. Ann. Cas., 764.

In the case of *Sale* v. *First Regular Baptist Church* (1883), 62 Iowa 26, 17 N. W. 143, 49 Am. Rep. 136, appellant sought to compel by writ of mandamus, his reinstatement as a member of the church. The court held that the action would not lie, and, in disposing of the question, said: "For some alleged offense against the church, the plaintiff has been expelled therefrom by the church. This is a purely ecclesiastical question into which we cannot inquire. By virtue of her church membership, the plaintiff became a member of the corporation, entitled only to the rights and privileges of a member of a corporation organized for religious or ecclesiastical purposes. The corporation was not organized for pecuniary profit. No such profit can possibly accrue to any member. No property interest, or any other valuable civil right, has been affected by the action of the church. The plaintiff has not and cannot suffer any civil damages whatever."

The relator in this case alleges, in general terms, that his rights as a member of the congregation and church from which he was expelled were valuable. But it is apparent that they are purely ecclesiastical, and not valuable in the sense that is required to give secular courts jurisdiction to supervise and control the tribunals provided by the church to hear and determine such matters.

State, ex rel., *v.* Cummins—171 Ind. 112.

The holdings are uniform that a writ of mandate will not issue to restore to membership one claiming to have been wrongfully removed from the church, when no property interests or civil rights are involved. *People, ex rel., v. German, etc., Church* (1873), 53 N. Y. 103; *People, ex rel., v. German, etc., Church* (1871), 3 Lans. (N. Y.) 434; *Hundley v. Collins* (1901), 131 Ala. 234, 32 South. 575, 90 Am. St. 33.

It is also settled that mandamus will not lie to restore a minister to his clerical rights and functions, where he has been wrongfully excluded therefrom by the trustees and congregation of the church, if he has no temporal right in such office, and no fees or emoluments are thereto attached. Mandamus lies for the enforcement of legal rights only, and not for those of a mere spiritual or ecclesiastical nature. Mandamus is a legal remedy for the enforcement of a legal right. *Union Church, etc., v. Sanders* (1855), 1 Houston (Del.) 100, 63 Am. Dec. 187; *State, ex rel., v. Bibb St. Church* (1887), 84 Ala. 23, 4 South. 40; *State, ex rel., v. Hebrew Congregation, etc.* (1879), 31 La. Ann. 205, 33 Am. Rep. 217.

If mandamus will not lie to restore membership, it is plain that such writ will not issue to compel a step to be taken involving no other right than such membership. No allegation appears in the pleadings sufficient to bring this controversy within the domain of the civil courts. It is of no consequence, therefore, upon what ground the peremptory writ was denied after a trial; the final conclusion and judgment were right, and must be affirmed.

The judgment is affirmed.