**CAPE et al. v. MOORE et al.**

No. 12843—Opinion Filed Feb. 22, 1927.

(Syllabus.)

1. **Religious Societies — Jurisdiction of Courts—Protection of Property Rights.**

As a general rule the civil courts are very guarded in the extent to which they will assume jurisdiction in the adjudication of church controversies. lest they invade the precincts of religious conscience in violation of constitutional guaranties of freedom of worship, yet when property rights are being violated, contrary to plain principles of the civil law. courts will generally intercede to protect such rights.

**2. Same.**

In the adjudication of property rights involved in religious controversies, the courts will confine. themselves strictly to the facts before them in the particular case.

**3. Same—Church Factions—Determination of Controversy.**

In a controversy over property rights between two factions of a church, where it appears from the evidence in the case that such church is strictly congregational, and is an independent sovereignty within itself, and is not subject to control by any higher church tribunal, such controversies will be determined by the ordinary principles of law which govern voluntary associations.

**4. Same—Obligations of Membership.**

Where persons voluntarily form and organize an association or church upon specified terms and conditions, known to and agreed upon by the persons forming such association or church, the members thereof will be bound by the terms and conditions of their compact.

**5. Same—Right of Majority Faction to Use Church.**

Where a church is organized upon the express condition that a majority of the members thereof shall rule in church affairs, the will of the majority must prevail.

And where there is a controversy between a majority and minority faction as to whether the majority shall be permitted to use the church property and occupy the church house as a place of worship, and the deed of conveyance to such property contains no further condition than that such property shall be used for the sole and only purpose of a place of public worship, the majority will not be denied the right to worship therein nor restrained from so doing.

Error from District Court, Murray County; T. P. Clay, Assigned Judge.

Action by J. J. Cape et al. against Jim Moore et al. Judgment for defendants, and plaintiffs appeal. Reversed, with directions.

Pearson & Baird, for plaintiffs in error.

Young, Haste & Powell and W. C. Austin, for defendants in error.

HARRISON, J. This litigation grew out of a controversy between two factions in the Missionary Baptist Church of Scullin, Okla., as to which faction should occupy and control the church house and other church property, and this appeal is to reverse a judgment of the district court of Murray county awarding such property to one faction, defendants in error, and restraining the other faction, plaintiffs in error, from interference therewith.

It appears from the record that said controversy arose and took its present concrete form out of the following circumstances; viz.:

Said church from the time of its organization up to the time this controversy arose had, as appears from the evidence. with many other Missionary Baptist churches, been aligned with and had affiliated with an organization referred to in the record as the Oklahoma State Convention, the general purposes of which organization, as appears from the record, being to assist its affiliating churches in the direction and management of missionary work, or rather to superintend the missionary work of its affiliating churches in sending out missionaries, home and foreign, the handling of mission funds, and general direction of missionary work.

There came a time in 1920 when a portion of said Scullin Missionary Baptist Church congregation favored obtaining a loan of $150 from or through said Oklahoma State Convention. but a portion of the congregation opposed such loan.

It also appears that a portion of the congregation had become dissatisfied with the methods of the Oklahoma State Convention in handling its mission affairs and wanted to withdraw from further affiliation with said organization and to align and affiliate with a similar organization, referred to in the record as the Chickasha Convention.

These propositions were all opposed by a portion of said church congregation, and the controversy grew to such bitterness as to result in two apparently irreconcilable factions, referred to in the record and briefs as the minority and the majority, the majority consisting of some 20 odd members, and the minority consisting of some nine to eleven members.

The majority withdrew from the Oklahoma State Convention and began affiliation with the Chickasha Convention, and called a pastor who was in sympathy with the Chickasha Convention.

The minority refused to be bound by these actions, withdrew from fellowship and took possession of the church property, including the church house, and locked its doors against the majority.

Thereupon the majority began a replevin action in the justice court for possession of the chattel property, taken over by the minority, and about the same time began an action in the district court for an injunction against locking the church doors.

The judgment of the justice court in the replevin action was appealed from to the district court, which in the meantime had issued a temporary restraining order against locking the church doors.

Upon final hearing, the two causes were consolidated in the district court and the general proposition as to which faction was entitled to possession and use of the church property was tried, resulting as aforesaid in the judgment decreeing the property to the minority and enjoining the majority from interference therewith, wherefore this appeal is prosecuted by the majority.

The whole affair is much regretted, and we earnestly hope that the resultant bitterness may pass away.

However, in assuming to exercise such powers as the civil courts are authorized to exercise in such matters we are forcibly reminded of the words of Mr. Justice Miller, who wrote the opinion of the Supreme Court of the United States in Watson v. Jones, 20 L. Ed. 666, a church controversy, in which the learned Justice said:

"Conscious as we may be of the excited feeling engendered by this controversy, and of the extent to which it has agitated the intelligent and pious body of Christians in whose bosom it originated, we enter upon its consideration with the satisfaction of knowing that the principles on which we are to decide so much of it as is proper for our decision are those applicable alike to all of its class, and that our duty is the simple one of applying those principles to the facts before us."

The undisputed facts before us in this case are:

That the church in question was at the time these dissensions arose a regular, orthodox, Missionary Baptist church in harmony with the principles, doctrine, teachings, tests, and tenets of faith and membership and manner of worship and rules of church government of the Missionary Baptist church denomination.

That each Missionary Baptist church congregation is an independent, self-governing, sovereign power or entity within itself, subject to no regulation, prescription, nor mandate of any higher church organization or ecclesiastical tribunal.

That the members in any Missionary Baptist church congregation constitute the sovereign governing power of such church.

That the law and teachings of Christ, as interpreted and construed by the Missionary Baptist church denomination, is the supreme law governing Missionary Baptist churches in matters of faith, worship, and church government.

That the Missionary Baptist church denomination believes and teaches that the right of the majority of the members of the church to rule its affairs is in accord with the law of Christ, and that in all matters and upon all questions the will of the majority must prevail, except that upon the question of receiving a member into the church probably a unanimous vote is required, but in all other matters the will of a majority of the church congregation is recognized as the law of the church.

That the various Missionary Baptist conventions or associations all recognize the sovereign independence of each individual Missionary Baptist church.

That the primary purpose of such conventions or associations as the Oklahoma State Convention and Chickasha Convention is the promotion of missionary work and assistance of their affiliating churches in such work.

That neither the affiliation or nonaffiliation of an individual church congregation with any of such conventions or associations is regarded or construed as a test of true faith and practice in, or departure from the cardinal doctrines taught by the Missionary Baptist church denomination, nor is the withdrawal from such affiliation so regarded or construed.

That in the event of contributions or donations from such conventions or associations to an individual church, such contribution or donation is construed as a gift or free offering, which does not carry with it any right or claim of a donor upon the amount so contributed, nor any lien upon the church property into which it goes.

Of course, in case of a loan from such a convention or association to a church the question of a lien upon the church property would depend upon the terms of the loan contract.

It is also an undisputed fact that plaintiffs in error constitute the majority, and that defendants in error are the minority.

It is also apparent that neither faction specifically charges the other with departure from the fundamental and essential doctrines of the Missionary Baptist church denomination nor denies that either faction would be entitled to membership in any regular Missionary Baptist church.

It is also an undisputed fact that the mi-

nority, defendants in error, withdrew from further fellowship with the majority, plaintiffs in error, and assuming to be the Missionary Baptist Church of Scullin, called a pastor, took charge of the personal property involved in the aforesaid replevin action, and proceeded to lock the church house doors against the majority, and that the majority likewise had elected a new board of deacons and called a pastor and offered to take the minority back into the church, if they would come in.

Also the deed held by the church to the real estate involved was introduced into the record and is as follows:

"Warranty Deed.

"State of Oklahoma, Murray County.

"Know All Men By These Presents, That A. P. Hudson, a widower, party of the first part, in consideration of the sum of two hundred ($200) dollars, in hand paid, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, and convey unto the Missionary Baptist Church of Scullin, Okla., and to the deacons of said church, viz.: S. T. Perrin, J. O. Ross, A. P. Hudson, and J. J. Cape, and to their successors, for the sole and only purpose of a place of public worship, parties of the second part, the following described real property and premises, situate in Murray county, state of Oklahoma, to wit:

"All of lot 7 in block 81 in the town of Scullin, Okla., together with all improvements thereon, and the appurtenances thereunto belonging, and warrant the title to the same.

"To have and to hold said described premises unto said parties of the second part, their successors and assigns forever, charges, taxes, judgments, mortgages and other liens and encumbrances of whatsoever nature.

"Signed and delivered this 25th day of March, 1919.

"(Signed)      A. P. Hudson.

(50c Revenue Stamp)

"State of Oklahoma, Murray County.

Before me, Mate C. Nicholson, a notary Public in and for said county and state, on the 25th day of March, 1919, personally appeared A. P. Hudson, a widower, to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

"Witness my hand and official seal the day and date above written.

"(Signed) Mate C. Nicholson, Notary Public.

"My commission Expires June 12, 1920."

The foregoing undisputed facts, together with the foregoing deed, constitute the determinative points of evidence before us. We are not assuming to say what the true doctrines of the Missionary Baptist church are. nor whether they accord with the teachings of Christ; we are merely saying what the undisputed facts before us show them to be. In assuming to apply the law to such state of facts, we bear in mind the well-guarded extent to which the civil courts should interfere in such church controversies, lest they invade the precincts of religious conscience, so securely protected by the Constitution of the United States, and likewise by art. 1, sec. 2, of the Constitution of this state.

But we bear in mind also that many pages of history bear evidence that religious controversies are often of the bitterest type and that in some instances property rights are violated to an extent which impels the court to protect such rights under the civil law.

We believe it to be the universal rule in our country. certainly a general rule with rare exceptions, that civil courts will intercede to protect property rights where such rights are being violated contrary to plain principles of law. See Watson v. Jones, 20 L. Ed. 666; First Baptist Church of Paris v. Fort et al. (Tex.) 49 L. R. A. 617; also 23 R. C. L. sec. 26, page 449, and cases cited in notes 4 and 5.

We deem it unnecessary to attempt an exhaustive discussion and review of authorities on the extent to which and the particular character of cases in which the civil courts will assume jurisdiction in religious controversies.

It will suffice to say that upon a state of facts similar to the facts here presented the decisions are practically in harmony, and the distinction between controversies in religious denominations which have appellate judicatories, as do the Presbyterian, Methodist, Episcopalian, and Catholic churches, and churches like the Missionary Baptist churches, where each church is an independent sovereignty, has been clearly drawn and the principles of law applicable to such conditions are well settled.

In Watson v. Jones. 20 L. Ed. 666, the Supreme Court of the United States held

"Where a church is of a strictly congregational or independent organization, and the property held by it has no trust attached to it, its rights to the use of the property must be determined by the ordinary principles which govern voluntary associations."

The application of these principles to con

troversies of the character here presented was followed in First Baptist Church of Paris v. Fort 'et al., supra.

And the same principles have been applied in the determination of similar controversies in many cases. See notes to Mack v. Kime, 24 L. R. A. (N. S.), beginning on page 692.

So, applying these principles to the matter before us, we have a voluntary association of persons organized for specified purposes under principles and rules of government and regulation of its affairs known to and agreed upon by the members forming the association.

The voluntary organization of this association, this church, constitutes a union and meeting of minds upon the conditions made by the foregoing state of facts, and the members are bound by terms of their compact.

Hence, it follows that the majority had a right to withdraw from the Oklahoma State Convention and to affiliate with the Chickasha Convention, and to the use of the church property in question as a place of public worship.

The right of a majority to control in such matter was known to and agreed upon and adopted by the members of the church as part of the conditions of the church organization and is binding.

We might have reached a different conclusion had the foregoing grant or deed been made upon conditions that the Scullin Missionary Baptist Church should continue to affiliate with the Oklahoma State Convention, or with any other convention, but the deed contains no such condition, makes no such reservation; the only condition imposed by the deed is that it is to be used "for the sole and only purpose of a place of public worship."

It neither imposes the condition that the grantees shall affiliate with any convention or association, nor that they shall continue in any specified principles or tenets of faith; the condition is "for the sole and only purpose of a place of public worship."

The fact that the Scullin Missionary Baptist Church is mentioned in the deed signifies no more than the mere name of the grantee. Upon these conclusions, the opinion filed is withdrawn and this opinion is rendered instead, the petition of defendants in error for rehearing is denied and the judgment below is reversed, with directions to dissolve the injunction.

Reversed, with directions.

BRANSON, C. J., and MASON, PHELPS,

HUNT, CLARK, and LESTER, JJ., concur. RILEY and HEFNER, JJ., not participating.