**James E. MARTIN, et al.,
Plaintiffs-Appellants,**

v.

**Billy Joe LEWIS, et al.,
Defendants-Appellees.**

Court of Appeals of Tennessee,
Eastern Section.

Oct. 18, 1984.

Application for Permission to Appeal
Denied by Supreme Court
April 1, 1985.

Ward Huddleston, Jr., and Gregory W. Francisco, Kingsport, for plaintiffs-appellants.

D. Bruce Shine, Kingsport, for defendants-appellees.

OPINION

FRANKS, Judge.

In this dispute between incorporators or directors of Pinebrook Independent Holiness Church of the Lord Jesus Christ, Incorporated, the chancellor voided an election of members, ordered four directors removed from office when they refused to approve proposed members in a subsequent election ordered by the court, and declared the slate of proposed members as members of the corporate body.

We reverse the trial court's judgment and dismiss the action on principles of the First Amendment to the Constitution of the United States.

The Pinebrook Holiness Church was organized as an unincorporated association in the early 1960's and, in 1981, members of the association voted to incorporate the church as a not for profit corporation. The proposed charter was prepared and issued by the Secretary of State of Tennessee on December 9, 1981, and recorded in the Register's Office of Sullivan County in June, 1982. Apparently, no other organizational steps were taken until four of the incorporators gave notice of a "first meeting of incorporators" to the remaining three incorporators for a meeting on October 17, 1982, for the sole purpose of electing members of the church. In this connection, the

corporate charter provides the corporation would have one class of members and:

Any individual ... may become a member of this nonprofit corporation when they are approved by the Board of Directors of this corporation and provided the applicant meets all other requirements prescribed by the constitution and by-laws of this corporation and each member shall be allowed to vote in the election of directors, officers, or other members or upon other matters of policy or upon matters as provided by law.

Appended to the notice was a list of 28 people proposed for membership in the church. On October 17, four of the incorporators or directors voted to elect the 28 people to membership in the church and three incorporators voted against. Thereafter, one of the four directors who had voted for the members joined the three directors who had voted against and filed this action seeking an injunction against the remaining directors from "attempting to interfere with the lawful business of said church" and for other relief. The defendants filed a counter-action seeking "injunctive relief" against plaintiffs from interfering with the operation of the church.

The chancellor conducted an evidentiary hearing and made findings of fact relative to the election held on October 17, 1982. He concluded the incorporators could properly vote on the members; however, he concluded the election was "not conducted according to Pinebrook Church law", and "it was arbitrary". On this basis he declared the election "null and void". The court then ordered another election authorizing the directors to only elect:

[a]dditional members who meet the criteria of the By-Laws existing on October 17, 1982. I find those criteria to be: A. That that person had attended a minimum of six worship services of Pine-

brook Church within sixty days of October 17, 1982; B. Had supported the Church through tithing or offerings if they had any income within sixty days of October 17, 1982; and were filled with the Holy Ghost....[1]

The election ordered by the chancellor was held on July 1, 1983, at which time four of the incorporators voted against all 15 individuals who had applied for membership. Whereupon, the chancellor held the four directors had "willfully violated the Order of the Court and willfully violated their duties as Trustees and Incorporators" of the church and ordered them removed from their positions. He then declared the 15 applicants that the majority of directors had rejected to be "lawful members of the Church Corporation".

The threshold issue on this appeal is whether the facts of this case fall within the doctrine of "marginal civil court review" of ecclesiastical decisions. The scope of such review was delineated in *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929), where the court stated:

In the absence of fraud, collusion, or arbitrariness, the decisions of the proper church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as conclusive, because the parties in interest made them so by contract or otherwise. 280 U.S., at 16, 50 S.Ct. at 7.

The chancellor's decision, based upon arbitrariness, could fall within the doctrine; however, this doctrine was severely restricted in *Serbian Eastern Orthodox Diocese, Etc. v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *rehearing denied* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976). The Supreme Court,

---

1. The by-laws referred to were adopted before the church was incorporated and provide:

. . . . .

(6) To be eligible to vote in the church business, one must be a regular attender of this church. And support this church as found in I Corinthians 16:1–2. Verse 2: Upon the first

day of the week let every one of you lay by him in store, as God has prospered him, that there be no gatherings when I come. Have participated in the church activities for 60 days or more. And be filled with Holy Ghost or seeking for the Holy Ghost.

after quoting the following from one of its earlier decisions:

> All who unite themselves to such a body [church] do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for. [Watson v. Jones] 13 Wall. [679], at 728–729, 20 L.Ed. 666. 96 S.Ct., at 2381,

observed that civil courts may not inquire into whether a church has followed its own laws and procedures to establish a basis for arbitrariness. The court concluded:

> We have concluded that whether or not there is room for "marginal civil court review" under the narrow rubrics of "fraud" or "collusion" when church tribunals act in bad faith for secular purposes, no "arbitrariness" exception ... is consistent with the constitutional mandate that civil courts are bound to accept the decisions ... on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense "arbitrary" must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them. 96 S.Ct., at 2382.

The church's charter in the instant case provides that authority to approve membership rests with the directors, yet after that body elected members on October 17, the trial court invalidated the election on the grounds the election was arbitrary and did not follow church law and established qualifications for membership by court decree. As the *Serbian* court notes, "this the First and Fourteenth Amendments forbid". Accordingly, we reverse so much of the trial court's judgment that invalidates the election of October 17, 1983, the removal of certain trustees and the designation of corporate members.

The cause is remanded to the trial court for entry of a judgment consistent with this opinion with costs of appeal assessed to appellants.

PARROTT, P.J., and GODDARD, J., concur.