Jessie B. FOWLER, Eugene Grayson, Maxine Grayson, Lucy M. Foster, and Eloise Nelson, Appellants,

v.

Bertrand M. BAILEY, Sr., Wilfred Thompson, Kelly Austin, A.J. Lewis, Albert Lewis, Gerald M. Payne, Haywood Payne, Shelby Morris, Webster Tottress, Andrew Washington, Cornelius Pearson, Rilas Walls, Clarence Woodfork, George W. Anderson, Ulysses Anderson, Q.D. Ponds, Ben Givens, C.P. Towns, and George Brooks, Appellees.

No. 67146.

Supreme Court of Oklahoma.

Dec. 8, 1992.

Concurring Opinion Dec. 14, 1992.

As Corrected Dec. 21, 1992.

John S. Turner, Martin & Turner, Tulsa, for appellants.

Steve Hickman, Frasier & Frasier, Tulsa, for appellees.

### ORDER

Petition for rehearing filed in this cause is granted and this Court's opinion promulgated herein on September 25, 1990 and reported at 61 OBJ 2516 is withdrawn and replaced by the opinion filed this date.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, HARGRAVE, ALMA WILSON, SUMMERS and WATT, JJ., concur.

KAUGER, J., concurs in part, dissents in part.

SUMMERS, Justice.

The plaintiffs were members of the St. Andrew Baptist Church in Tulsa who became concerned over the way their pastor was conducting the business of the church. They filed an action in the District Court against pastor Bailey, the deacons, and the trustees, requesting among other things, an injunction against excommunication, access to the financial records of the church and an accounting. They were immediately expelled from the church by unanimous vote of the congregation at a hastily called business meeting following a Wednesday night prayer service. After a hearing the trial court dismissed the suit because neither civil nor property rights of the plaintiffs were affected. The Court of Appeals summarily affirmed. On certiorari the plaintiffs re-urge their case and seek church reinstatement.[1]

The Courts will not interfere with the internal affairs of a religious organization except for the protection of civil or property rights. *Wolozyn v. Begarek*, 378 P.2d 1007, 1011 (Okl.1963); *Cage v. Cansler*, 119 Okl. 36, 248 P. 612, 613 (1926). There can, however, be no doubt but that the civil courts do have authority to resolve property disputes between rival factions of a church. *Jones v. Wolf*, 443 U.S. 595, 602, 99 S.Ct. 3020, 3024, 61 L.Ed.2d 775 (1979). On appeal the plaintiffs seek relief on two fronts. They ask that we (1) permit the District Court to hear their claims for reinstatement into the church, and (2) direct the lower court to hear and resolve their objection to the alleged misuse of church property (which would include, of course, access to the church financial records.)

1. Our earlier opinion in the case was withdrawn on rehearing.

For reasons to be explained, we can afford the plaintiffs no relief.

## I.

■ The plaintiffs argue that their expulsion was void, and request relief in the form of a civil judicial order reinstating them as members of the church. Such ecclesiastical relief is beyond the power of a civil court. A "civil or property right" that justifies the exercise of civil judicial power has long been distinguished from ecclesiastical or "spiritual" rights that civil courts do not adjudicate. Civil courts in this country recognize that they have no ecclesiastical jurisdiction,[2] and church disciplinary decisions cannot be reviewed for the purpose of reinstating expelled church members. In *Shannon v. Frost*, 42 Ky. (3 B.Mon.) 253 (1842) the court said:

> We cannot decide who ought to be members of the church, nor whether the excommunicated have been justly or unjustly, regularly or irregularly cut off from the body of the church.
>
> We must take the fact of expulsion as conclusive proof that the persons expelled are not now members of the repudiating church; for, whether right or wrong, the act of excommunication must, as to the fact of membership, be law to this court.

*Id.* 42 Ky. at 258.

This case has been frequently cited and its language used in other cases.[3]

■ The issue of whether the church proceeding complied with church rules or custom in expelling members presents no

question for our review on a claim for reinstatement. In *Ramsey v. Hicks, supra,* the court said:

> It cannot concern the civil authorities whether one accused of a spiritual offense be tried by an unconstitutional tribunal, or be denied merely religious rights and privileges without trial or without cause, since membership in an unincorporated religious society does not constitute a civil or valuable right within the meaning of the law.

*Id.* 91 N.E. at 351.

We agreed with this rule in *First English Lutheran Church v. Bloch*, 195 Okl. 579, 159 P.2d 1006 (1945), where we said: "Civil courts will not review acts of religious organizations relating solely to internal ecclesiastical affairs for the sole purpose of ascertaining whether they are in accord with policy, discipline, or usages of the organization." *Id.* 159 P.2d at 1008. A more recent exposition of this principle in the context of "due process" is found in *Nunn v. Black*, 506 F.Supp. 444 (W.D.Va. 1981), *aff'd.* 661 F.2d 925 (4th Cir.1981), *cert. denied*, 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 299 (1982).

In *Nunn* the court said: "Specifically, the present inquiry is whether the plaintiffs had a right in Church membership protected by the Constitution or Federal law that was abridged when they were expelled by the congregation." *Id.* 506 F.Supp. at 447. The court answered this inquiry with the following:

> Finally, it is clear that the fact that the local church may have departed arbitrari-

**2.** In *Cage v. Cansler*, 119 Okl. 36, 248 P. 612, 613 (1926) we quoted with approval authority noting a civil court's lack of ecclesiastical jurisdiction. For an example of a civil court on this continent exercising ecclesiastical jurisdiction prior to Independence see *Goodwin v. Lunan*, (1771), reported in Thomas Jefferson, *Reports of Cases Determined in the General Court of Virginia From 1730 to 1740 and From 1768 to 1772*, 96–108 (1829 & reprint 1981).

**3.** *See e.g., Watson v. Jones*, 80 U.S. (13 Wall.) 679, 725, 20 L.Ed. 666 (1872); *Bouldin v. Alexander*, 82 U.S. (15 Wall.) 131, 139–140, 21 L.Ed. 69 (1872); *Ramsey v. Hicks*, 174 Ind. 428, 91 N.E. 344, 351 (1910); *State ex rel. Hatfield v. Cummins*, 171 Ind. 112, 85 N.E. 359, 361 (1908);

*Hendryx v. People's United Church of Spokane*, 42 Wash. 336, 84 P. 1123, 1125 (1906); *Pounder v. Ashe*, 44 Neb. 672, 63 N.W. 48, 51 (1895); *Nance v. Busby*, 91 Tenn. 303, 18 S.W. 874, 881 (1892); *Landis v. Campbell*, 79 Mo. 433, 437–438 (1883); *Fitzgerald v. Robinson*, 112 Mass. 371, 379 (1873). Later cases in agreement include *Deloisted v. Hilson*, 120 Neb. 788, 235 N.W. 340 (1931); *Caples v. Nazareth Church of Hopewell Ass'n.*, 245 Ala. 656, 18 So.2d 383, 386 (1944), quoting *Bouldin v. Alexander, supra*. *See also Martin v. Lewis*, 688 S.W.2d 72, 74 (Tenn.App. 1984), (civil court may not determine if church irregularly exercised authority in ecclesiastical matter).

ly from its established expulsion procedures in removing the plaintiffs is of no constitutional consequence, whether one appeals the First, Fifth, or Fourteenth Amendments. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714, 96 S.Ct. 2372 [2382], 49 L.Ed.2d 151 (1976). It is the very nature of religious matters that ecclesiastical decisions are accepted as articles of faith, as opposed to the rational, objective mode of analysis and procedure used in secular decision-making. Therefore, in the present case, constitutional concepts of due process, involving secular notions of "fundamental fairness" or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance. 426 U.S. at 715, 96 S.Ct. at 2383. Thus, the plaintiffs' contentions that their due process rights were violated in that their contributions to the church were expropriated by the expulsion is of no merit. Similarly, the above conclusion is not varied by the fact that the Church of God of Prophecy has no structured decision-making process.

*Id.* 506 F.Supp. at 448.

 We now accept as fundamental the position that a church's decision as to the status of a person's church membership must be considered as binding and beyond the reviewing power of courts such as ours. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Hadnot v. Shaw*, 826 P.2d 978, 986 (Okl.1992); *First Presbyterian Church of Perry v. Myers*, 5 Okl. 809, 50 P. 70, 74 (1897); *Shannon v. Frost, supra.* Church membership, by itself, is not a civil or property right subject to civil judicial regulation, and we will not compel a church to reinstate a member.

There is, to be sure, a line of cases from a minority of jurisdictions holding otherwise. In *Kennedy v. Gray*, 248 Kan. 486, 807 P.2d 670 (1991) the court determined that membership in a church was sufficiently similar to membership in a voluntary association that legal principles governing the latter could be applied to the former. The Kansas court observed that

its cases on voluntary associations "give members rudimentary due process rights because a member has some equitable property rights in the assets of the association." *Id.* 807 P.2d at 676. That court then explained that where the church was a congregational church courts may not only inquire as to whether the rules of the organization were followed in expelling a member but whether the expulsion was the result of a "fairly-conducted meeting in the first place." *Id.* The court explained that the expelled member possessed "the right to reasonable notice, the right to attend and advocate one's views, and the right to an honest count of the votes." *Id.*

This "due process" language of the Kansas opinion appears to be in accord with *Abyssinia Missionary Baptist Church v. Nixon*, 340 So.2d 746, 748 (Ala.1977). In this regard see also *Bagley v. Carter*, 235 Ga. 624, 220 S.E.2d 919, 920–921 (1975); and *Moustakis v. Hellenic Orthodox Society*, 261 Mass. 462, 159 N.E. 453, 456 (1928), (reasonable notice of charges and opportunity for hearing are required in the absence of authority for arbitrary expulsion from membership).

 We prefer, however, to maintain our jurisprudential distance from those jurisdictions. We are strongly committed to the correctness of the decisions holding that church membership is within the ambit of ecclesiastical jurisdiction and outside that of the civil courts. We therefore find a compelling reason *not* to apply legal principles governing incorporated voluntary associations to church discipline proceedings that expel members of a congregation. Such holding does not apply to church property disputes. See *Oklahoma Dist. Council v. New Hope Assembly of God*, 597 P.2d 1211, 1215 (Okl.1979); *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666, 675 (1872), where the Court discussed resolution of a congregational church property dispute by application of the ordinary principles that govern voluntary associations.

 We recognize that Saint Andrew Baptist Church was incorporated in 1945

under authority of 18 O.S.1941 § 541.[4] In *Oklahoma Association of Insurance Agents v. Hudson*, 385 P.2d 453 (Okl.1963) we observed that 18 O.S.1961 §§ 541–550 governed a benevolent corporation. *Id.* 385 P.2d at 453. Two of those sections dealt with the expulsion of a member [5] and we commented on the application of one of them. *Id.* Church bylaws, articles, or constitutions specifying how membership is acquired, maintained, or lost have an obvious and important public value for civil courts in adjudicating church property disputes. But a legislature, like a civil court, has no ecclesiastical jurisdiction over the discipline and expulsion of church members. In *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943) the Court said that no governmental official can prescribe what shall be orthodox in religion. Thus, in a church discipline proceeding a church may irregularly, i.e., contrary even to church procedure, discipline or expel a member and still be free of review for correctness by a civil court in this jurisdiction.

▇▇▇▇ A civil court *may* determine the regularity of a church meeting and who is a member of a church for the purpose of determining the identity of those individuals who collectively represent the church and are entitled to control church property. *Bouldin v. Alexander*, 82 U.S. at 140; *First Presbyterian Church in U.S. v. Cumberland Presbyterian Church*, 34 Okl. 503, 126 P. 197, 202 (1912); *Hendryx v. People's United Church of Spokane*, 42 Wash. 336, 84 P. 1123 (1906). Similarly, civil courts have examined the regularity of

church procedure when property rights are subject to deprivation. *Reid v. Gholson*, 229 Va. 179, 327 S.E.2d 107, 113 (1985) *cert. denied*, 474 U.S. 824, 106 S.Ct. 80, 88 L.Ed.2d 65 (1985). However, as we are about to explain, the case before us is not a property dispute subject to civil authority.

## II.

The plaintiffs were members of the congregation when they filed suit, presenting to the District Court grievances including the following:

(A) The Defendants have listed church real estate for sale without consent or approval of the members of the church.

(B) Employees including the defendant Bailey, have received increases in salary without approval of the membership of the church.

(C) The defendant Bailey has abused his telephone and gasoline credit cards furnished and paid for by the church by permitting unauthorized individuals to use the same and having the charges paid for by the church.

(D) Purchasing of equipment using church funds including automobiles, without approval of the church.

(E) Disposing of church property for less than fair market value.

(F) Using church funds for excessive travel, entertainment and personal or family purposes.

(G) Charging members of the church for use of church facilities for weddings and funerals.

---

**4.** The 1981 version of § 541 was repealed by Okla.Sess.Laws 1986, c. 292, § 160, eff. Nov. 1, 1986. The 1941 version of Section 541 provided:

Persons associated together for religious, charitable, educational, benevolent or scientific purposes may elect not less than three nor more than forty-one trustees or directors and may incorporate themselves as provided for in this Article. The fees for the certificate and the seal under this Article, shall be two dollars.

**5.** 18 O.S.1961 § 548 provided:

No member, or his legal representative, must dispose of or transfer any right or privilege conferred on him by reason of his member-

ship of such corporation, *or be deprived thereof,* except as herein provided. (Emphasis added).

The 1981 version of § 548 was repealed by Okla. Sess.Laws 1986, c. 292, § 160, eff. Nov. 1, 1986. Section 546 (Third) stated that the bylaws could provide for: "The expulsion and suspension of members for misconduct or non-payment of dues; also for restoration of membership." The 1981 version of § 546 was repealed by Okla. Sess.Laws 1986, c. 292, § 160, eff. Nov. 1, 1986. We note that 18 O.S.1991 § 562 requires the Articles of religious corporation or society governed thereby to provide for the terms of admission and qualifications of members.

(H) Submitting incorrect insurance claims and failing or refusing to account for the proceeds thereof.

 The plaintiffs thus allege that a faction of the church had engaged in dissipating the assets of the church by diverting church funds to uses that were unauthorized by the church. Some of their claims alleging the diversion of church property to non-church uses may have been capable of invoking civil judicial relief, and some may not have been. See *Jones v. Wolf,* 443 U.S. at 602, 99 S.Ct. at 3024, where the Court said that "the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice." We need not, however, address the extent to which their claims were cognizable when they filed suit, because their expulsion mooted any claims they had as to the diversion of church property to non-church uses.

 It is true that membership is not always required to show standing to prosecute a church property dispute. In *Bouldin v. Alexander,* 82 U.S. at 140, the court explained that a trustee of property would not necessarily lose that status by expulsion from church membership. However, the justiciability of property disputes is generally dependent upon a plaintiff's church membership. The Supreme Court of Missouri, for example, held that a plaintiff must be a member of the church when he or she brings an action for the benefit of the members of the church, because membership shows standing to bring the action. *Edgmond v. Brixey,* 450 S.W.2d 166, 167–168 (Mo.1970).

The plaintiffs failed to show that the church property they complained about was no longer in the custody of Saint Andrew Baptist Church. In the trial court the plaintiffs took the position that they had not brought any legal proceeding against the church, but rather against certain individuals. Their reason for doing so is not clear from the record.[6] To the extent that title to any church property in dispute was held by *the church* then plaintiffs' position is that of a claimant requesting a civil court to exercise control over the property of a non-party, and must fail. See *Cage v. Cansler,* 119 Okl. 36, 248 P. 612, 613 (1926) where neither the trustees holding title to church property nor the beneficiary of the trust were made parties, and the trial court was thus without authority to dispose of the church property.

Nor did the plaintiff show that a majority of the church had been deprived of the property. See *Cape v. Moore,* 122 Okl. 229, 253 P. 506 (1927), holding that the faction containing a majority of members was entitled to property where church rule and use of property was based upon the will of the majority. Further, the plaintiffs did not show at trial that they, rather than a majority of the church, were entitled to control of the property, or that they represented the majority of the church and, as such, were entitled to control the property to the exclusion of the defendants. Never did the plaintiffs claim at trial that control of the church property should be exercised on some basis other than by the majority of the church. The plaintiffs at trial simply showed no standing upon which to pursue their claims.

 In *Application of State ex rel. Department of Transportation,* 646 P.2d 605, 609 (Okl.1982) we said that standing is determined by whether the party has a legally cognizable interest in the outcome of the controversy. The requested relief herein was in the nature of an attempt to benefit members of the church. Since the plaintiffs were no longer members their civil lawsuit could give them no effectual relief. See *Lawrence v. Cleveland County Home Loan Auth.,* 626 P.2d 314, 316 (Okl. 1981). A plaintiff may lose standing and a controversy become moot during the

---

**6.** Their position may be due to the fact that a legal proceeding against the church was grounds for expulsion under the bylaws. The Answer filed by the defendants claimed that the plaintiffs had failed to join the church and all of the Board of Trustees as parties and that such was necessary for claims concerning church property. At trial the church took the position that it had perceived the suit as a legal proceeding against the church for purposes of church discipline.

course of litigation. *Craig v. Boren*, 429 U.S. 190, 192, 97 S.Ct. 451, 454, 50 L.Ed.2d 397 (1976); *See also Northeast Okl. Elec. v. Corporation Commission*, 808 P.2d 680 (Okl.1991). Here the plaintiffs were expelled from the church and lost standing to prosecute the action for the benefit of the members of the church. We conclude that this controversy is not a property dispute requiring a civil adjudication of who is entitled to control church property.

### III.

The plaintiffs argue that they were the equivalent to stockholders in a business corporation filing a lawsuit to obtain access to the financial records of a corporation. The statutory authority relied on by plaintiffs appeared in the Oklahoma Business Corporation Act at 18 O.S.1981 § 1.71.,[7] which stated in part:

> b. All records specified in Section 16 of this act [1.16], whether required to be kept in the registered office or in lieu of which a statement may be there kept, shall be kept by every corporation open to inspection or examination, and to the taking of extracts or the making of abstracts therefrom, *by each shareholder or voting trust certificate holder,* in person or by agent or attorney, at any reasonable time, for any proper purpose, at the place where such records are usually kept. (Emphasis added)

The language of the statute specifically refers to a shareholder or voting trust certificate holder.

 The plaintiffs were members of the Saint Andrew Baptist Church, a nonprofit church incorporated without stock under 18 O.S.1941 § 541. The plaintiffs were members of the church but not shareholders nor trust certificate holders. The plain language of the statute does not include the plaintiffs within the class of individuals

having a right of access to the financial records of a corporation.

In *Wolozyn v. Begarek, supra,* we assumed for the purposes of that opinion, without deciding, that the rights of inspection under § 1.71 would apply to a controversy among church members. *Id.* 378 P.2d at 1010. We hold today that the right of inspection provided by § 1.71 did not apply to a nonprofit, non-stock church. The plaintiffs had no statutory right under § 1.71 to inspect the financial records of the church either before or after their expulsion from the church.

The opinion of the Court of Appeals is vacated and the judgment of the District Court is affirmed.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

KAUGER, J., concurs in part, dissents in part.

SIMMS, Justice, concurring in judgment.

Although I would not have granted rehearing, I concur in the Judgment reached by the majority opinion.

OPALA, Chief Justice, concurring.

I concur generally in today's pronouncement that (a) the plaintiffs' quest for reinstatement of their church membership status is not cognizable in secular courts and (b) that their mid-litigation expulsion from church membership mooted any claims they may have had for relief from diversion of church property to non-church use. I join in affirming the trial court's dismissal of the plaintiffs' action to compel inspection of records, but I write separately to stress that neither as church members nor as excommunicated parishioners do the plaintiffs have standing to press their probe into church records.

---

**7.** Section 1.71 was repealed by Laws 1986, c. 292 § 160, eff. November 1, 1986. The petition was filed May 9, 1986 and the trial court rendered judgment July 25, 1986.

## I

### THE ANATOMY OF LITIGATION

While members of St. Andrew Baptist Church, the plaintiffs sued their pastor as well as church trustees and deacons for access to the church books and records. The purpose of the suit was to inquire into the use, abuse or misuse of church property.[1] The plaintiffs' allegations assume as a legal given that their membership status entitles them to a property interest in the church assets. They were expelled from church membership shortly after bringing the lawsuit. The trial court sustained the defendants' demurrer to plaintiffs' evidence. The Court of Appeals affirmed and we granted certiorari.

1. Plaintiffs allege in their petition that defendants have breached their fiduciary duty *to the plaintiffs and the other members of the church* by various abuses of church property, such as (a) listing church real estate for sale, increasing church employees' salaries and purchasing equipment and automobiles *without approval of church members;* (b) *using church funds* for excessive travel, entertainment, personal or family purposes and for payment of telephone and gasoline credit card charges by unauthorized persons; (c) *disposing of church property* for less than fair market value; (d) *charging members* for the use of church facilities for weddings and funerals; and (e) *submitting incorrect insurance claims* and failing or refusing to account for the proceeds.

2. 426 U.S. 696, 708–710, 96 S.Ct. 2372, 2380–2381, 49 L.Ed.2d 151 (1976). There, a defrocked bishop sued his church, claiming that the defrockment was wrongful and arbitrary under the internal doctrines of the church and seeking a declaration that he should remain in control of the diocesan property. The Court holds the dispute was primarily of a doctrinal nature—one that lies solely within ecclesiastical cognizance—because the religious issue determined the right to control the church property. *Serbian* teaches that civil courts may decide only those church property disputes which do not require resolution of underlying doctrinal controversies.

3. Oklahoma case law is not without explicit and firm commitment to the First Amendment jurisprudence of the U.S. Supreme Court. *See Hadnot v. Shaw*, Okl., 826 P.2d 978, 988 (1992), and *Guinn v. Church of Christ of Collinsville*, Okl., 775 P.2d 766, 773 (1989). *Hadnot* and *Guinn* teach that ecclesiastical decisionmaking on internal governance in the church and on matters of faith or religious creed are not subject to re-

## II

### CHURCH MEMBERSHIP STATUS DOES NOT GIVE STANDING TO ONE WHO SEEKS TO EXAMINE CHURCH RECORDS

*Serbian Eastern Orthodox Diocese, Etc. v. Milivojevich*[2] teaches that standing to press a claim against one's church must rest on a property interest recognized by secular law (the civil law of the state) and not on one predicated upon ecclesiastical law (the law of the church or denomination).[3] A dispute that is primarily of a doctrinal nature or internal church governance lies solely within ecclesiastical cognizance.[4] In contrast, an individual's right to church property may be cognizable in a secular court.[5] One who seeks to press a claim against one's church must be a so-called "Hohfeldian plaintiff"[6]—i.e., a per-

examination in civil courts. The former opinion notes that the "Free Exercise Clause prohibits civil courts from inquiring into any phase of ecclesiastical decisionmaking—its merits as well as procedure." *Id.* 826 P.2d at 988. Because religious judicature is immune from any civil court inquest, it is also protected from intrusion by discovery. *Id.* at 989.

4. In *Guinn* the absolute privilege against scrutiny by secular authority did not apply to a tort victim who was no longer a member of a church when the tortious acts were committed. *Id., supra* note 3. *Hadnot* teaches that any activity *outside of valid church judicature* is not absolutely privileged and may be discoverable. *Hadnot, supra* note 3 at 990.

5. *Serbian, supra* note 2, 426 U.S. at 710, 96 S.Ct. at 2381.

6. A Hohfeldian plaintiff is one who seeks a judicial determination that *he* has "a right, a privilege, an immunity or a power" vis-a-vis the opposite party in litigation. Jaffe, The Citizen As Litigant In Public Actions: The non-Hohfeldian or Ideological Plaintiff, 116 U.Pa.L.Rev. 1033 (1968). A non-Hohfeldian plaintiff, on the other hand, sues to secure judicial relief that would benefit other persons or the community as a whole. *Id.* The *qui tam* plaintiff of the common law, who sues primarily to benefit a public entity, is typically non-Hohfeldian. *State ex rel. Trimble v. City of Moore*, Okl., 818 P.2d 889, 894 (1991); *see Flast v. Cohen*, 392 U.S. 83, 120, 88 S.Ct. 1942, 1963, 20 L.Ed.2d 947 (1968) (Harlan, J., dissenting); Scott, Standing in the Supreme Court—A Functional Analysis, 86 Har. L.Rev. 645, 660–662 n. 1 (1973); Davis, Standing: Taxpayers and Others, 35 U.Chi.L.Rev. 601, 604–607 (1968); *see also Sierra Club v. Morton*, 405 U.S. 727, 732 n. 3, 92 S.Ct. 1361, 1364–1365, n. 3, 31 L.Ed.2d 636 (1972); *Clark v. Valeo*, 559

son who has a personal[7] or proprietary interest at stake within the meaning of the state's civil law.[8] The plaintiffs, now expelled church members, are *non-Hohfeldian plaintiffs*. The interest they tendered below for judicial vindication *is neither personal nor proprietary*. A church member is not invested with a proprietary interest in the assets of his church or religious denomination. Neither members nor nonmembers acquire an interest in the church through their tithes or contributions. Donations to one's church are viewed in law as no more than gifts.[9]

As non-Hohfeldian plaintiffs, both before and after their expulsion, these excommunicated parishioners had no standing to probe into the church's books and records. Their demand for access to these documents, based solely on membership, is not predicated on a legally cognizable interest. A person litigating against a church cannot ground standing on his ecclesiastical rank (as in *Serbian*) or his parishioner status.

A secular court is without cognizance to settle a quest for church membership reinstatement or a controversy over one's claim to recognition of church membership status within an ecclesiastical body.[10] That question must be reserved for church judicature. Our First Amendment jurisprudence teaches that the constitutionally mandated respect for *exclusive* ecclesiastical cognizance over church membership comes to an end when a person's *consensual* allegiance to a religious community stands withdrawn.[11] It is then that the power of judicature for claims arising from post-withdrawal interaction of the abandoned congregation with a parishioner may pass to secular (civil) courts.[12]

In short, these plaintiffs, who attempt to bootstrap mere church membership into standing required for a property interest recognition, press a demand contrary to *Serbian's* teaching. *One's membership status in a church confers no interest in the property of that church.*[13]

F.2d 642, 675 (D.C.1977). In a stockholder's derivative suit the plaintiff is in the very same category. *Warren v. Century Bankcorporation, Inc.*, Okl., 741 P.2d 846, 847, 853 (1987).

The words *right, privilege, power* and *immunity* are used in this context in their Hohfeldian sense, i.e., as shown by his [Hohfeld's] table of jural opposites and correlatives:

| | (right | privilege | power | immunity |
|---|---|---|---|---|
| "Jural Opposites | ( | | | |
| | (no-right | duty | disability | liability |
| | (right | privilege | power | immunity |
| Jural Correlatives | ( | | | |
| | (duty | no-right | liability | disability" |

W.N. Hohfeld, Fundamental Legal Conceptions 36 (1923).

"In a suit [against the Governor] for accounting [of expenditures from his legislative mansion allowances] petitioners [news reporters] would occupy the status of so-called 'non-Hohfeldian' plaintiffs, i.e. persons whose interest tendered for judicial vindication is neither personal nor proprietary." *Oklahoma City News Broadcasters Ass'n v. Nigh*, Okl., 683 P.2d 72, 78 n. 2 (1984) (Opala, J., concurring in result); *see Johnson v. Walters*, Okl., 819 P.2d 694, 708, 713 n. 28 (1991) (Opala, C.J., concurring in part and dissenting in part); *In re Initiative Petition No. 349*, Okl., 838 P.2d 1, 24 (1992) (Opala, C.J. dissenting); *Flast, supra*, 392 U.S. at 119, 88 S.Ct. at 1962 n. 5 (Harlan, J., dissenting) (where the non-Hohfeldian plaintiffs sought to enjoin an unauthorized use of collected revenue).

7. For the meaning of "personal" interest, see 76 O.S.1991 § 6. Its terms are:

"Besides the *personal rights* mentioned or recognized under law, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations." (Emphasis mine.)

8. A *former church member* may have standing as a *Hohfeldian* plaintiff to press a claim for tortious acts arising from post-withdrawal or from post-excommunication church activity or from conduct *unrelated to the church's efforts at effectuation of its valid judicature*. *Hadnot, supra* note 3; *Guinn, supra* note 3.

9. *Stone v. Salt Lake City*, 356 P.2d 631, 634 (Utah 1960).

10. *Serbian, supra* note 2, 426 U.S. at 710–711, 96 S.Ct. at 2381.

11. *Torcaso v. Watkins*, 367 U.S. 488, 493–495, 81 S.Ct. 1680, 1682–1684, 6 L.Ed.2d 982 (1961); *Guinn, supra* note 3 at 776.

12. *Watkins, supra* note 11, 367 U.S. at 493–495, 81 S.Ct. at 1682–1684; *Guinn, supra* note 3 at 776.

13. *Serbian, supra* note 2, 426 U.S. at 710–711, 96 S.Ct. at 2381.

 

## SUMMARY

A parishioner's claim against the church for inspection of her records must be based on the principles of secular law. A person litigating with a church (whether a clergyman or parishioner) cannot predicate *standing* on ecclesiastical rank or parishioner status. *Standing in that context must be Hohfeldian in its purest form.* These plaintiffs could not press their claim for inspection of records or for accounting based on mere parishioner status, even if they had been retained as members in good standing as a matter of internal religious discipline.